## A. M. FERGUSON v. SMITH & DUNHAM.

1. NAMES OF PARTIES; *Initial Letters — Christian Names.* No written instrument can be regarded as a nullity because the christian name of any person mentioned therein has not been written in full but only the initial letters thereof have been used. And in any case, before a court can set aside any proceeding had in court, or make any order against a party because the christian name of any person mentioned in any paper in the court has not been written in full, the court must first give ample time and opportunity to the party interested to have the name written in full.

2. UNDERTAKING ON ATTACHMENT; *Residence of Sureties.* Where an undertaking shows on the face thereof that the sureties therein are resi-

Statement of the Case.

dents of "Chetopa, Labette county," and the affidavit of their justification shows that said sureties justified in the "State of Kansas, Labette county," this is sufficient *prima facie* to show that the sureties reside in the state of Kansas.

3. DEPUTY CLERK OF DISTRICT COURT; *May Administer Oaths.* The power to administer oaths does not belong exclusively to courts. When exercised by a ministerial officer it is purely a ministerial power. This power is given to the clerk of the district court, and he may exercise it as a ministerial power. He is by law authorized to appoint a deputy, and his deputy may administer oaths as a ministerial power. Such power is in its nature essentially ministerial, and not judicial; and if it were not a necessary incident to courts it would not be supposed to partake of the attributes of judicial power.

4. ATTACHMENT; AFFIDAVIT; *Nature of Plaintiff's Claim.* Where the statement of the nature of the plaintiff's claim, in an affidavit for an order of attachment, is not sufficiently definite and certain, a motion to dissolve the attachment for such cause should state wherein and in what particulars such statement is indefinite and uncertain, so as to give the plaintiff an opportunity to amend the affidavit.

5. ——— *Statement of Grounds for Attachment.* Mere technical defects, and unsubstantial departures from the words of the statute in stating the grounds for an order of attachment, are to be disregarded. The law does not, and courts should not, regard mere trifles.

*Error from Labette District Court.*

FERGUSON as plaintiff brought suit in the district court against *Smith & Dunham,* defendants. Plaintiff sued by the name of *"A. M. Ferguson,"* and defendants were sued as *"Frank Smith"* and *"E. A. Dunham,"* partners, etc. An order of attachment was issued. The affidavit for the attachment is as follows:

"STATE OF KANSAS, COUNTY OF LABETTE, ss.: William Lemon of lawful age, being first duly sworn, deposes and says, that he is the duly authorized agent of A. M. Ferguson, who is about to commence an action in the district court of said county, against Frank Smith and E. A. Dunham, copartners, doing business under the firm-name of F. Smith & Co., at Chetopa, Kansas, to recover the sum of $930.85 now due and payable to the said Ferguson, from the said Smith & Dunham on an account for merchandise sold by the said Smith & Dunham as auctioneers on commission for the said Ferguson; and this affiant further says, the said claim is just, and that there is now justly due said Ferguson on said

commission-sales from the said Smith & Dunham, the sum of $930.85, and the said Ferguson ought to recover said sum from said Smith & Dunham. And this affiant further says that Frank Smith, one of the above-named debtors, has absconded with intent to defraud his creditors. WM. LEMON.

"Subscribed to in my presence and sworn to before me this 17th of October 1871. DAN. S. MORRISON, Clerk.
"*By R. J. Elliott, Deputy.*"

An undertaking was given by "William Lemon and James Lemon of Chetopa, Labette county," in the sum of $1,862. The sureties made and signed an affidavit justifying their responsibility, which affidavit was indorsed on said undertaking, as follows:

"STATE OF KANSAS, LABETTE COUNTY, ss.: Personally appeared before me, Wm. Lemon and James Lemon, who being first duly sworn depose and say, that they are worth the sum of $1,862, over and above all liabilities and exemptions, and liable to execution."

On the 13th of March 1872 the defendants appeared and filed a motion to vacate and discharge the attachment, as follows:

[TITLE OF ACTION.] "And now come the defendants and move the court that the attachment heretofore granted in the above cause, be vacated and discharged, for the following reasons:

"1st. That neither the summons nor attachment, nor other papers, contain the names of the parties.

"2d. That the justification of the sureties in the undertaking is not sufficient in amount nor form, nor made before the clerk.

"3d. That the affidavit on which the order of attachment is granted is not made before a competent officer, and it does not specify the cause of action on which the plaintiff relies, nor on which an order of attachment will issue; nor does it set forth any ground for allowing the order provided by law."

Said motion was heard before the district court at the March Term 1872. Said court sustained said motion, and dissolved the attachment. The plaintiff excepted, and brings the case here on error. [The transcript embraces the bill of exceptions settled at the instance of *Ferguson* on the order

made by the district judge at chambers dissolving said attachment at the instance of Wiggins and others, judgment-creditors of defendants, (and upon which *Ferguson* brought error, as shown in the previous case, just decided, *ante*, p. 394.) The plaintiff in this case assigns error on said chambers-order, made at the instance of such creditors, as well as on the order of the court made at the instance of defendants, dissolving the order of attachment. Said judgment-creditors are not joined as defendants in error in this case.]

*J. H. Crichton,* and *J. D. Conderman,* for plaintiff in error:

1. No motion has been made in the court below by defendants to set aside or strike from the files the summons or petition in the action, or to make petition more specific on the ground of defect or want of names of either of the parties. Such omission amounts to a waiver of any defect, if any existed upon that point. So long as the summons and petition are allowed to stand with the parties as therein named, without objection made in the court below, the affidavit, order of attachment, and other papers cannot be attacked on that ground, said papers in the auxiliary proceedings having by reference the same title as the original petition.

2. The names by which the parties appear in the papers in the case are those by which they are generally known, and therefore answer the requirements of the statute. But if the omission to insert the given names of parties in full be an error, or defect, which the defendants are in a situation to take advantage of, it is not such an one as affects the substantial rights of the parties, and therefore should not be regarded. Code, § 140.

3. The amount stated in bond is double that claimed in the petition, as required by § 192 of the code. The justification required in § 723 is merely for the protection of the clerk, and is no part of the bond. If only wrong in form, it should not be dismissed unless a motion requiring the plaintiff to correct it had been made by defendants, and not then until time had been allowed to correct the informality.

After the bond has been accepted and sureties approved by the clerk and papers issued thereon, if the sureties are not qualified as required by law, the burden of proof is upon defendant, to show that they are not qualified. No showing was made in the court below that they were not proper sureties. The justification is no part of bond; and a defect therein cannot be considered fatal. No informality should be regarded that does not affect a substantial right. The justification is not required to be made before the clerk. Code, § 723.

4. The affidavit states the cause of action generally, which is all that is required. Code, § 191; *Haywood v. McCrary*, 33 Ill., 460. The ground for the attachment is in the words of the statute. The words "debtor" and "defendant" are synonymous terms, as used. The use of the word "debtor" in place of "defendant," is a clerical error, if error at all; and if the affidavit is defective in form, the proceedings should not be dismissed until time had been allowed to correct the informality: *Robinson v. Burton*, 5 Kas., 293.

*Ayres & Fox* for defendants in error:

1. It appears by the bill of exceptions that Wiggins and others, are judgment-creditors of defendants; and as this is substantially a contest between creditors there seems no objection on principle to allow the judgment-creditors, by motion, the right of removing the impediment and cloud of this attachment upon the debtors' property (a trust fund for the payment of the common debts,) without resorting to an action.

2. The omission in the order of attachment and other papers of the christian names of parties is sufficient ground for setting aside and dissolving the order of attachment.

3. The affidavit of justification of the sureties in the undertaking does not show that they are residents of the state. Code, § 724. And it shows that the "sureties," not their property, are "liable to execution."

4. The affidavit for the attachment, if sworn to by and before any one, was before the *deputy* of the clerk. The deputy has no power to administer an oath. Gen. Stat., 598,

ch. 72. The administering of an oath is not an act enjoined or permitted to the clerk as a mere *ministerial* officer; nor is the power given by the code to the deputy to administer oaths. Code, § 720.

The "affidavit" moreover does not "specify the nature of the plaintiff's claim," whether upon account for goods sold and delivered, or converted by defendants, or for money had and received, or goods sold by defendants as auctioneers, on commission, whether on contract or in tort. It also sets forth that one of the above-named "debtors" instead of "defendants," has absconded. The attachment was therefore unauthorized.

The opinion of the court was delivered by

VALENTINE, J.: An order of attachment was issued in this case in favor of the plaintiff in error as plaintiff below, and against the defendants in error. The attachment was dissolved, first, on motion of Joseph M. Wiggins and others who were judgment-creditors of the defendants, and not parties to the suit, and second, on motion of the defendants themselves. It will not be necessary for us in this case to examine the question whether an attachment can be dissolved on the motion of a judgment-creditor who is not a party to the suit; for upon the motion of the defendants themselves, who have an undoubted right to make such a motion, it will be necessary for us to examine the merits of the attachment and to examine and decide every question which was raised by the motion made by the judgment-creditors, except the question as to the right of the judgment-creditors to make the motion. The two motions are in every other respect identical. Indeed, we could not in this case properly examine or decide the question of the right of the judgment-creditors to make the motion, for they have not been made parties in this court by the petition in error, (*Ferguson v. Smith*, just decided, *ante*, p. 394,) and we are not asked in this case to decide any such question.

I. It is claimed that the order of attachment and other

papers in this case omit the christian names of the parties.
This is in one sense true. Said papers do not give the full

**1. Christian names; initial letters.**    christian names of all the parties, but give the initial letters thereof only. This we think is
sufficient. The reason upon which a different rule was once
founded in England has never existed in this state. And
when the reason for the rule has ceased the rule itself should
cease. *Cessante ratione legis, cessat ipsa lex.* The full chris-
tian name is now seldom written anywhere. Search the
records of our courts, our statutes, the lists of members of
the legislature, election returns, written contracts, and other
written instruments, newspapers, etc., and everywhere it will
be found that as a rule the initials only of the christian name
are used. Of course, the court might for good cause shown
require that the christian name be written in full. But still,
in consideration of the almost universal custom of using the
initial letters only of the christian name, it is our opinion
that no written instrument can at the present time be regarded
as a nullity simply because the christian name of some person
mentioned therein has not been written in full. And in any
case, before a court can set aside a proceeding had in the
court, or make any order against a party, because the christian
name of any person mentioned in any paper in the court has
not been written in full, the court must first give ample time
and opportunity to the party interested to have the name
written in full.

II. It is also claimed that the affidavit of justification of
the sureties on the attachment bond is not sufficient. It is
claimed that it is not shown by the bond that said sureties

**2. Undertaking on attachment; sureties; residence; sufficiency.**    are residents of the state. Is it necessary that the bond should show it? The bond was regu-
larly approved by the clerk; (§192 of the code;
Laws of 1870, page 172, §5.) Does it not therefore devolve
upon the other party to show that the sureties were not at
the time the bond was executed residents of the state? But
it is sufficiently shown that the sureties were residents of the
state. The bond shows that they were residents of "Chetopa,

Labette county," and they justified in the "State of Kansas, Labette county." This is sufficient *prima facie* to show that the sureties resided in the state of Kansas. It is also claimed that the sureties were not shown to be worth double the amount secured. The bond was for more than double the amount secured, and the sureties were shown to be worth more than the amount of the bond. Hence they were shown to be worth more than double the amount secured. It is further claimed that said sureties were not shown to be worth any sum above their debts. It is shown that they were "worth the sum of $1,862 over and above all liabilities and exemptions." We suppose that a debt is a liability; that the word "liabilities" includes debts, and therefore that it was shown that the sureties were worth the sum of $1,862 over and above all exemptions, debts and other liabilities. We think the court might have required an amendment of the justification so as to have made it conform to the language of the statute; (Code, § 724; *Robinson v. Burton*, 5 Kas., 293, 300;) but the court could not arbitrarily, and without giving any opportunity to amend, dissolve the attachment for such a slight discrepancy as may be found between this justification and the statute. It is also claimed that the affidavit of justification says that the sureties "are liable to execution." What if it does? The attachment should not be dissolved for that reason alone. A surety might be liable to an execution, and be ample security for a hundred times the amount to be secured. But the affidavit of justification does not say that the sureties are liable to an execution. It substantially says that the sureties have $1,862 over and above all their liabilities and exemptions which would be liable to be taken on an execution.

III. It is claimed that the affidavit for the attachment was not sworn to. It was in fact sworn to before the *deputy* clerk of the district court. But it is claimed that a deputy clerk has no power to administer an oath, and therefore that the affidavit was not in law sworn to at all. We think otherwise. All ministerial officers were at

<span style="font-variant: small-caps">3. Deputy clerk may administer oaths.</span>

common law empowered to appoint deputies; (*Whitford v. Lynch,* ante, p. 180, and cases there cited.) But clerks of the district courts are specially authorized by statute to appoint deputies in this state. (Gen. Stat., 287, § 149.) There is no statute defining the powers of the deputy district clerks, and there is no statute establishing any limitation upon their powers. So far as anything is expressed in the statutes, the deputy clerk of the district court may do anything that the clerk himself may do; and such is the natural inference to be drawn from the statutes. The very article that authorizes clerks of the district courts to administer oaths also authorizes clerks of the district courts to appoint deputies; (Gen. Stat., 287, art. 11, §§ 151, 149.) Section 720 of the code provides that "Any duty enjoined by this code upon a *ministerial officer,* and any act permitted to be done by him, may be performed by his lawful deputy." (Gen. Stat., 771, § 720.) And section 723 of the same code provides that "A *ministerial officer* whose duty it is to take security in any undertaking provided for by this code, or by other statutes, shall require the person offered as surety to make an affidavit of his qualifications, *which affidavit may be made before such officer,* and shall be indorsed upon or attached to the undertaking." (Gen. Stat., 771, § 723.) We quote this to show that a ministerial officer may by statute administer an oath. Also, notaries public, county clerks, and registers of deeds are authorized to administer oaths; (Gen. Stat., 598, § 1;) and they are all ministerial officers. The power to administer oaths is however an incident to all courts. It belongs to all courts. Whenever a court is created, that power is also necessarily created as being a necessary incident to the court. But such power does not belong exclusively to courts. When exercised by a ministerial officer it is purely a ministerial power, and the act of the officer is a ministerial act. This power is given to the clerk of the district court, and either he or his deputy may exercise it as a ministerial power. It is not in its nature anything like judicial power. It has none of the attributes of judicial power. It does not require the exercise of judgment, discre-

tion, discernment, or discrimination, as the exercise of judicial power does. It is essentially in its nature ministerial. If it were not a necessary incident to courts no one would ever suppose that it had any of the attributes of judicial power. (As throwing some light upon this question see *Amrine v. K. P. Rld. Co.*, 7 Kas., 178; *Whitford v. Lynch*, supra; *Huey v. Van Wie*, 23 Wis., 613.)

IV. It is claimed that the affidavit for attachment does not state the nature of the plaintiff's claim. It does, however.

4. Affidavit for attachment; nature of plaintiff's claim. The claim was for "the sum of $930.85, now due and payable to the said Ferguson from the said Smith & Dunham on an account for merchandise sold by the said Smith & Dunham as auctioneers on commission for the said Ferguson." If this was not sufficiently definite and certain the defendants should have stated in their motion to dissolve the attachment wherein and in what particular it was not sufficiently definite and certain, so as to give the plaintiff an opportunity to amend the affidavit. This the defendants did not do; and the defect in the affidavit, if there is any such defect, is not obvious.

V. It is also claimed by the defendants that the affidavit for attachment was insufficient because "It purports to set forth the grounds of the attachments in the words of the

5. Statement of grounds for attachment. statute by way of conclusion, yet states that one of the above-named *debtors* has absconded instead of one of the defendants." Frank Smith is one of the parties to this action. The action was brought against *Frank Smith* and E. A. Dunham, partners as F. Smith & Co. He is and was when the affidavit was filed one of the *defendants,* and the affidavit so showed it. It was also alleged in the affidavit that he was one of the *debtors* of the plaintiff. The part of the affidavit claimed to be defective as stating "debtor" instead of "defendant" reads as follows: "The affiant further says that *Frank Smith,* one of the above-named *debtors,* has absconded with intent to defraud his creditors." The statute under which this part of the affidavit was intended to be drawn reads as follows: "When the *defendant,* or one of several *defendants,*

has absconded with the intention to defraud his creditors." (Sec. 190 of the code; laws of 1870, page 171, § 4, subdiv. 2.) The point made is, *too fine.* We shall not discuss it. The affidavit was good enough. How Frank Smith could have absconded when considered as a *debtor,* and not have absconded when considered as a *defendant,* we are entirely unable to comprehend.

The order of the court below dissolving and vacating the order of attachment on the motion of the defendants must be reversed, and cause remanded for further proceedings.

All the Justices concurring.