No. 54,152

DEBRA COLLEEN COOK, *Appellant,* v. CITY OF TOPEKA, KANSAS, and
KAREN SUE FINLEY, *Appellees.*

(654 P.2d 953)

Opinion filed December 3, 1982.

*Jerry K. Levy,* of Topeka, argued the cause and was on the brief for appellant.

*Robert E. Duncan, II,* assistant city attorney, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

McFARLAND, J.: Debra Colleen Cook, plaintiff herein, appeals from the summary judgment entered in favor of defendants City of Topeka and Karen Finley (Clerk of the Topeka Municipal Court) in this action brought under the Kansas Tort Claims Act (K.S.A. 1981 Supp. 75-6101 *et seq.*) and the Civil Rights Act of 1871 (42 U.S.C. § 1983 [Supp. IV 1980]).

The following facts do not appear to be controverted. In April 1980, Ms. Cook pled guilty to speeding 44 m.p.h. in a 35 m.p.h. zone and not guilty in a red-light violation, all in case number 2625 in the Topeka Municipal Court. Trial was set for June 9, 1980, but was continued to July 7, 1980. Ms. Cook failed to appear for the new trial setting and the judge ordered her bond

forfeited and a bench warrant issued. Within a week thereof (the exact date is unclear) Ms. Cook appeared and entered a guilty plea to the red-light violation. Fines and costs totaling $69.00 were assessed by the judge with Ms. Cook being given until August 15, 1980, to pay said amount. Prior to August 15, Ms. Cook paid the entire $69.00 fine to the clerk's office and received a receipt therefor. Through an omission in the clerk's office, the Warrant Division of the Topeka Police Department was not notified to return the bench warrant. As a result thereof, on September 4, 1980, Debra Cook was arrested on the bench warrant by the Shawnee County Sheriff's Department and taken to the Topeka Police Station. Upon her appearance as directed in the municipal court the following morning, the error was discovered. Ms. Cook brings this action against the Clerk and the City of Topeka for damages alleged to have resulted from her arrest.

The district court's rationale in granting summary judgment in favor of the defendants is as follows:

"[T]he omission of the defendant Finley in this case was to perform a judicial function and that the defendants are entitled to judicial immunity under both the Kansas Tort Claims Act and 42 U.S.C. 1983."

The narrow issue on appeal is whether the district court erred in concluding the court clerk's recall (or failure to recall) a bench warrant is the performance of a judicial function and therefore cloaked with judicial immunity under the Kansas Tort Claims Act and the Civil Rights Act of 1871.

The immunity issue relative to the Kansas Tort Claims Act is obviously a matter of state law. The immunity issue relative to the Federal Civil Rights Act of 1871 (42 U.S.C. § 1983) must be determined pursuant to federal law. *Owen v. City of Independence,* 445 U.S. 622, 63 L.Ed.2d 673, 100 S.Ct. 1398, *reh. denied* 446 U.S. 993 (1980).

We shall first consider whether the trial court erred in concluding the defendant clerk was performing a judicial function when she failed to recall the bench warrant and hence has judicial immunity from suit under the Kansas Tort Claims Act (K.S.A. 1981 Supp. 75-6101 *et seq.*).

The exception in the Kansas Tort Claims Act with which we are concerned is set forth in K.S.A. 1981 Supp. 75-6104 as follows:

"A government entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

"(b) judicial function;"

Defendants argue, in essence, that all activities of the judicial branch at any level of government fall within "judicial function" as that term is used in K.S.A. 1981 Supp. 75-6104. Accordingly, they argue the omission herein by the municipal court clerk was a part of the judicial function and renders defendants immune from liability.

Plaintiff argues, in essence, that "judicial function," as that term is used in the exception statute, is limited to discretionary judicial activities such as deciding cases, etc. and does not include a clerk's failure to perform a ministerial act required by law.

Both parties cite authorities from Kansas and other jurisdictions in support of their respective positions. In researching this area of the law, it immediately becomes apparent that the meaning of the term "judicial function" varies somewhat depending on the context in which it appears.

When "judicial function" is being distinguished from "legislative function" and "executive function," the emphasis is on the basic division of powers in our American form of government. In *Van Sickle v. Shanahan*, 212 Kan. 426, 511 P.2d 223 (1973), the functions of the three branches of government were discussed as follows:

"Generally speaking, the legislative power is the power to make, amend, or repeal laws; the executive power is the power to enforce the laws, and the judicial power is the power to interpret and apply the laws in actual controversies."

"The doctrine of separation of powers is an inherent and integral element of the republican form of government, and separation of powers, as an element of the republican form of government, is expressly guaranteed to the states by Article IV, Section 4, of the Constitution of the United States." Syl. ¶¶ 8 and 9.

When "judicial function" is being distinguished from "legislative function" or "administrative (executive) function" in the context of different functions being performed by the same governmental entity, then the emphasis shifts to the factors involved in performing the particular activity. Illustrative thereof is *Golden v. City of Overland Park*, 224 Kan. 591, 584 P.2d 130 (1978), wherein this court said:

"A city, in enacting a general zoning ordinance, or a planning commission, in exercising its primary and principal function under K.S.A. 12-704 in adopting and in annually reviewing a comprehensive plan for development of a city, is exer-

cising strictly legislative functions. When, however, the focus shifts from the entire city to one specific tract of land for which a zoning change is urged, the function becomes more quasi-judicial than legislative. While policy is involved, such a proceeding requires a weighing of the evidence, a balancing of the equities, an application of rules, regulations and ordinances to facts, and a resolution of specific issues." 224 Kan. at 597.

Where "judicial function" is being distinguished from "ministerial act" the emphasis shifts to discretionary acts versus performance of some duty involving no discretion. Illustrative thereof is *Ferguson v. Smith & Dunham,* 10 Kan. 396 (1872), wherein this court said:

"When exercised by a ministerial officer it [the giving of an oath] is purely a ministerial power, and the act of the officer is a ministerial act. This power is given to the clerk of the district court, and either he or his deputy may exercise it as a ministerial power. It is not in its nature anything like judicial power. It has none of the attributes of judicial power. It does not require the exercise of judgment, discretion, discernment, or discrimination, as the exercise of judicial power does. It is essentially in its nature ministerial. If it were not a necessary incident to courts, no one would ever suppose that it had any of the attributes of judicial power." 10 Kan. at 404-405.

See also *Hamma v. People,* 42 Colo. 401, 94 Pac. 326 (1908), wherein it was said:

"Judicial functions are determined by the intrinsic character of the duty or act itself, and not by the character of the official designated to perform it.

"An act in the performance of a ministerial duty is imperative; it is done in obedience to some legal mandate; it involves the exercise of no official discretion and of no judgment as to the propriety of the act. In these respects it is wholly unlike an act in the performance of judicial duties.

" 'A ministerial act may be defined to be one which the person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done.' " 42 Colo. at 407.

In which sense is "judicial function" used in K.S.A. 1981 Supp. 75-6104(*b*)? The definition of "legislative functions" contained in section (*a*) of the same statute provides:

"(*a*) Legislative functions, including, but not limited to, the adoption or failure to adopt any statute, regulation, ordinance or resolution;"

Said definition of legislative function is obviously not a blanket exemption of each act of every employee of every state, county, or municipal governmental entity simply because the employing governmental entity may exercise legislative powers. We believe the same is true of "judicial function." In the

context of a court clerk's activities, judicial function is the opposite of ministerial act.

Judicial function does not incorporate ministerial tasks. Black's Law Dictionary declares ministerial to be the opposite of judicial:

"MINISTERIAL. That which is done under the authority of a superior; opposed to *judicial;* that which involves obedience to instructions, but demands no special discretion, judgment or skill." Black's Law Dictionary 1148 (4th ed. rev. 1968).

A clerk of a court is a ministerial officer, *Eldridge v. Deets,* 4 Kan. App. 241, 243, 45 Pac. 948 (1896), and without statutory authority cannot exercise judicial functions. *In re Terrill,* 52 Kan. 29, 31, 34 Pac. 457 (1893). See also 15A Am. Jur. 2d, Clerks of Court § 21, p. 155.

One test used to determine whether a clerk of a court is engaged in a judicial, quasi-judicial or ministerial task is to see if a statute imposes a duty upon the clerk to act in a certain way leaving the clerk no discretion. In Am. Jur. 2d it is stated while "[t]here is some conflict as to the judicial or ministerial nature of certain specific duties of a clerk of court; . . . *his duty is purely ministerial when it is prescribed by statute."* 15A Am. Jur. 2d, Clerks of Court § 21, p. 156 (emphasis supplied). In *Hamma v. People,* 42 Colo. 401, the Colorado Supreme Court noted the impact of a statutorily imposed duty upon a county judge.

"The very fact that the statute provides for auditing, correcting, and adjusting the accounts of the county judge by the county commissioners is proof conclusive that the keeping of those accounts is not a judicial function." 42 Colo. at 409.

K.S.A. 12-4108 imposes a ministerial duty on a clerk of a municipal court to ". . . file and preserve all papers . . . [and] [t]he clerk shall receive, account for and pay to the city treasurer monthly all fines and forfeited bonds paid into the court."

Am. Jur. 2d, citing Kansas authority, states:

"It is the duty or function of a clerk of court to make and keep an accurate record [*Bush v. Bush,* 158 Kan. 760, 150 P.2d 168 (1944)] of the proceedings in his court and of what the court orders and adjudges. In the performance of these duties the clerk acts ministerially and under the exclusive jurisdiction and direction of the court, and has no power to pass on or contest the validity of any act of the court which purports to have been done in the performance of its judicial function. Where required by statute the clerk must make some record of the filing of a paper presented to him, keep a current general index of recorded instruments, and keep a trial or special proceeding docket." 15A Am. Jur. 2d, Clerks of Court § 24, at 159-60.

A clerk of court who neglects or omits a ministerial task is liable for damages to one injured by the negligence or omission. 15A Am. Jur. 2d, Clerks of Court §§ 27, 28, pp. 163-65; 14 C.J.S., Clerks of Courts § 53, pp. 1252-53; *Maddox v. Astro Investments,* 45 Ohio App. 2d 203, 74 Ohio Op. 2d 312, 315, 343 N.E.2d 133, 137 (1975); *Governor v. Dodd,* 81 Ill. 162 (1876).

The only statement on the record as to how the payment of fines and recall of warrants was handled in Topeka Municipal Court, appears in the defendant Clerk's deposition. After stating that the procedure upon payment was to call the Warrant Division of the Topeka Police Department and request return of the warrant, the Clerk made the following answers relative to the municipal judge's noninvolvement therein.

"Q. . . . once the judge makes the decision as to the dollar amount and the payment date, how is the judge involved in the case, you know, after he makes those two decisions?

"A. He would become involve[d] if the person did not pay the fine and when, after we issue commitments for unpaid fines he would then become involved.

"Q. So from the time that the decision as to the amount and payment date is made until you bring it back to his attention it wasn't paid, then it's essentially under your direction and control?

. . . . .

"A. Yes."

The Clerk has no discretion on whether or not to recall a bench warrant after the traffic fine payment is made. The routine recall of a warrant by the municipal court clerk upon payment of the traffic fine is wholly ministerial in nature. Clerical error in failing to do a ministerial act does not convert the activity into a judicial function.

We conclude the trial court erred in holding defendants had judicial immunity from suit under the Kansas Tort Claims Act and in entering summary judgment based thereon.

We turn now to the issue of whether the trial court erred in holding defendants were entitled to summary judgment based upon judicial immunity on plaintiff's claim asserted under the Civil Rights Act of 1871 (42 U.S.C. 1983).

42 U.S.C. 1983 (Supp. IV 1980) provides in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitu-

tion and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege "[f]irst . . . that some person has deprived him of a federal right [and] [s]econd, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635, 640, 64 L.Ed.2d 572, 100 S.Ct. 1920 (1980).

The United States Supreme Court has recognized the "expansive sweep" of 42 U.S.C. § 1983. Writing for the Court in *Owen v. City of Independence,* 445 U.S. 622, Justice Brennan observed:

"By its terms, § 1983 'creates a species of tort liability that on its face admits of no immunities.' *Imbler v. Pachtman,* 424 U.S. 409, 417 (1976). Its language is absolute and unqualified; no mention is made of any privileges, immunities, or defenses that may be asserted. Rather, the Act imposes liability upon '*every person*' who, under color of state law or custom, 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" 445 U.S. at 635.

Therefore, in analyzing a case under 42 U.S.C. § 1983, one must start with the basic concept that all persons, no matter what position they hold or what activity they are engaged in, may be liable for violations of a plaintiff's rights under the Federal Constitution and laws if the violation occurs under color of state law or custom.

From this extreme rule, the United States Supreme Court has recognized some exceptions. Several of these exceptions were listed in *Owen v. City of Independence* as follows:

"Several more recent decisions have found immunities of varying scope appropriate for different state and local officials sued under § 1983. See *Procunier v. Navarette,* 434 U.S. 555 [,55 L.Ed.2d 24, 98 S.Ct. 855] (1978) (qualified immunity for prison officials and officers); *Imbler v. Pachtman* 424 U.S. 409 [, 47 L.Ed.2d 128, 96 S.Ct. 984] (1976) (absolute immunity for prosecutors in initiating and presenting the State's case); *O'Connor v. Donaldson,* 422 U.S. 563 [, 45 L.Ed.2d 396, 95 S.Ct. 2486] (1975) (qualified immunity for superintendent of state hospital); *Wood v. Strickland,* 420 U.S. 308 [, 43 L.Ed.2d 214, 95 S.Ct. 992 (*reh. denied* 421 U.S. 921)] (1975) (qualified immunity for local school board members); *Scheuer v. Rhodes,* 416 U.S. 232 [, 40 L.Ed.2d 90, 94 S.Ct. 1683] (1974) (qualified 'good faith' immunity for state Governor and other executive officers for discretionary acts performed in the course of official conduct)." 445 U.S. at 637-38.

Absolute judicial immunity was recognized by the United

States Supreme Court in *Pierson v. Ray,* 386 U.S. 547, 18 L.Ed.2d 288, 87 S.Ct. 1213 (1967), wherein the court stated:

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in *Bradley v. Fisher,* [80 U.S.] (13 Wall.) 335 [,20 L.Ed. 646] (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' (*Scott v. Stansfield,* L.R.3 Ex. 220, 223 (1868), quoted in *Bradley v. Fisher, supra,* 349, note, at 350.) It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

"We do not believe that this settled principle of law was abolished by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights. The legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities. Accordingly, this Court held in *Tenney v. Brandhove,* 341 U.S. 367 [, 95 L.Ed. 1019, 71 S.Ct. 783] (1951), that the immunity of legislators for acts within the legislative role was not abolished. The immunity of judges for acts within the judicial role is equally well established, and we presume that Congress would have specifically so provided had it wished to abolish the doctrine." 386 U.S. at 553-55.

By clear and unequivocal language the United States Supreme Court has held that judicial immunity is an absolute defense to a § 1983 action. The United States Supreme Court has, apparently, never addressed the question of whether a court clerk may, under any circumstances, assert a judicial immunity defense to a § 1983 action.

In a general discussion of the standard to be employed in determining whether or not an immunity exists in a § 1983 action, the United States Supreme Court has said:

"[O]ur finding of § 1983 immunity 'was predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.' *Imbler v. Pachtman,* [424 U.S.] at 421. Where the immunity claimed by the defendant was well established at common law at the time § 1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act, we have construed the statute to incorporate that immunity." *Owen v. City of Independence,* 445 U.S. at 638.

More specific federal case law relative to the status of court clerks under § 1983 is found only in lower federal court decisions. As might be expected, these decisions are far from unani-

mous in their conclusions. In *Marty's Adult World of New Britain, Inc. v. Guida,* 453 F. Supp. 810, 815, (D. Conn. 1978), the court noted that "[t]he type of immunity available to court clerks, if any, is an unsettled question."

Up to this point in the opinion, we have generally discussed judicial and other immunities under § 1983. With this background we turn our attention to the specific issue before us. Did the trial court err in granting summary judgment to the defendants based on the conclusion that the Clerk's failure to recall the bench warrant was within judicial immunity under § 1983?

For convenience certain facts are repeated. By virtue of the summary judgment herein, obviously the facts have not been fully developed. However, the clerk's deposition outlines the procedure followed as to recall of warrants. Upon payment of the fine the clerk's office is to call the Warrant Division of the Topeka Police Department to direct return of the outstanding warrant. The Clerk's explanation as to why the plaintiff's warrant was not recalled was that "we had forgotten to call for it as we are supposed to."

As to whether recalls are ministerial acts of the Clerk's office or at the express direction of the municipal judge, the following questions were asked and answers given:

"Q. Referring back to Exhibit 4 [court docket sheet], once the judge makes the decision as to the dollar amount and the payment date, how is the judge involved in the case, you know, after he makes those two decisions?

"A. He would become involve[d] if the person did not pay the fine and when, after we issue commitments for unpaid fines he would then become involved.

"Q. So from the time that the decision as to the amount and payment date is made until you bring it back to his attention it wasn't paid, then it's essentially under your direction and control?

. . . . .
"A. Yes."

"Q. These functions of calling the Topeka Police Department and then filing the bench warrant back in with the ticket, those are functions that are under your supervision and control?

. . . . .
"A. Yes."

There is nothing in the record at this time indicating that the Clerk was acting under the express direction of the judge not to recall the warrant. All indications are that the recall was a routine

duty of the Clerk's office which, through erroneous omission, was not done.

Under such circumstances, did the trial court err in concluding the Clerk had judicial immunity under § 1983? We believe that it did.

We conclude that the weight of federal authority extends absolute judicial immunity under § 1983 to court clerks only when they are acting: (1) in a quasi-judicial capacity; or (2) under court order or under the express direction of a judge thereof. Court clerks may have qualified immunity when they are acting in good faith and within the scope of their authority. See *Tarter v. Hury,* 646 F.2d 1010 (5th Cir. 1981); *Williams v. Wood,* 612 F.2d 982 (5th Cir. 1980); *Henriksen v. Bentley,* 644 F.2d 852 (10th Cir. 1981); *Slotnick v. Garfinkle,* 632 F.2d 163 (1st Cir. 1980); *Denman v. Leedy,* 479 F.2d 1097 (6th Cir. 1973).

The federal cases dealing with court clerks' immunity under § 1983 arise under many different factual situations and their individual review herein would be of little assistance. Cases since 1978 appear more consistent with each other than do the earlier cases. Note 2862 following 42 U.S.C.A. 1983 (West 1981) is a note dealing just with Clerks of Court, and anyone seeking to survey the whole area may refer thereto as an appropriate starting point.

In order for the Clerk to have absolute judicial immunity available as a defense hereto, the facts would have to establish she was acting: (1) in a quasi-judicial capacity; or (2) acting under court order or under the express direction of a judge. The quasi-judicial exception is applicable to discretionary duties of a judicial nature. An example of this type of activity is seen in *Denman v. Leedy* involving a clerk whose alleged wrongdoing was in the exercise of a statutory right to set bail in misdemeanor cases. Clearly the routine duty to recall a bench warrant upon payment of the fine cannot be construed as a quasi-judicial act. Likewise, there is no indication in the record the clerk did not recall the warrant by virtue of a court order or judicial direction. On the record before us, we conclude the trial court erred in granting summary judgment in favor of the defendants based on absolute judicial immunity.

From the facts indicated herein, the Clerk might, on remand, be able to establish a qualified privilege upon a showing that she was acting within the scope of her authority and in good faith.

Such a defense was discussed in *Marty's Adult World of New Britain, Inc. v. Guida,* 453 F. Supp. 810, as follows:

"Although absolute immunity may be available to protect discretionary actions of a clerk, such as setting bail amounts, *Denman v. Leedy,* 479 F.2d 1097 (6th Cir. 1973), only qualified immunity should be accorded clerks performing ministerial duties, such as filing papers and preparing records. *McLallen v. Henderson,* 492 F.2d 1298, 1299 (8th Cir. 1974); *McCray v. Maryland,* 456 F.2d 1, 3-4 (4th Cir. 1972); *cf. Briggs v. Goodwin,* [569 F.2d 10, 16, n. 7 (1977)]. This rule seems more in accord with the reasoning of the recent Supreme Court decisions which base the need for a certain level of protection upon the particular function of the public official involved. Qualified immunity, sometimes referred to as a ' "good faith and probably [*sic*] cause" defense,' protects officials who have acted within the scope of their authority, *McCray v. Maryland, supra* at 4-5. This defense is established through the presentation of facts at trial concerning the official's state of mind and the reasonableness of his conduct." 453 F. Supp. at 816.

The defendant has the burden of proof to show that it comes within the qualified "good faith" immunity exception to § 1983. *Gomez v. Toledo,* 446 U.S. 635, 640, 64 L.Ed.2d 572, 100 S.Ct. 1920 (1980).

Even though the defendant Clerk of the Topeka Municipal Court may be able to invoke the "good faith" qualified immunity, the defendant City of Topeka may not rely upon the clerk's good faith in order to absolve itself of a § 1983 action. In *Owen v. City of Independence,* 445 U.S. 622, the United States Supreme Court held that a municipality was not entitled to a qualified immunity under § 1983 by asserting the good faith of its officers or agents as a defense. The United States Supreme Court explained its reason for not allowing a municipality to rely upon the good faith of its officers when it stated:

"The knowledge that a municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights. Furthermore, the threat that damages might be levied against the city may encourage those in the policymaking position to institute internal rules and programs designed to minimize the likelihood of unintentional infringements on constitutional rights. Such procedures are particularly beneficial in preventing those 'systemic' injuries that result not so much from the conduct of any single individual, but from the interactive behavior of several government officials, each of whom may be acting in good faith." 445 U.S. at 651-52.

*Owen v. City of Independence* was a 5 to 4 decision. The strong dissent therein points out many defects in both the majority opinion's stated legal basis and justification for denying the

"good faith" defense to municipalities. We are, however, bound by the majority opinion.

### Conclusion

We conclude the district court erred in holding the defendant Municipal Court Clerk's recall (or failure to recall) a bench warrant is the performance of a judicial function and, therefore cloaked with judicial immunity under the Kansas Tort Claims Act (K.S.A. 1981 Supp. 75-6101 *et seq.*) and the Federal Civil Rights Act of 1871, (42 U.S.C. § 1983 [Supp. IV 1980]).

The judgment is reversed and remanded for further proceedings.