**Ahmad AKBARNIA, et al., Plaintiffs,**

v.

**Burton DEMING, et al., Defendants.**

**Civ. A. No. 93–2369–KHV.**

United States District Court,
D. Kansas.

Feb. 7, 1994.

Gregory W. Vleisides, Vleisides, Donnelly, O'Leary & Moroney, Kansas City, MO, Catherine A. Donnelly, Vleisides, Donnelly, O'Leary & Moroney, Mission, KS, for plaintiffs.

David R. Erickson, Kristopher A. Kuehn, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, for defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on *Defendants' Joint Motion to Dismiss or in the Alternative Motion for Summary Judgment* (Doc. # 13) filed November 5, 1993. Because the parties have presented matters outside the pleadings, the Court shall treat the motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

### Background

The following facts are uncontroverted for purposes of this motion: On April 30, 1991, Ahmad Akbarnia had divorce proceedings pending before the Honorable Herbert W. Walton in the District Court of Johnson County, Kansas. At that time, Mr. Akbarnia's wife, Bita Akbarnia, had primary physical custody of their three minor children, Merriam, Amir, and Mona. Judge Walton ordered the Akbarnias to "immediately seek evaluation and counseling at the Johnson County Mental Health Center with a request that a report of said evaluation and counseling be submitted to the Court with specific recommendations as to what would be in the parties' children [sic] best interest in regard to custody and visitation."

Defendants are licensed psychologists employed by Johnson County and working at the Johnson County Mental Health Center. Defendants performed the court-ordered evaluations and submitted their findings on September 10, 1991, specifically recommending "an initial period of no contact between Merriam and her father." In a *Journal Entry* dated September 23, 1991, Judge Walton ordered that Merriam "be immediately placed in the custody of the Secretary of Social and Rehabilitation Services pursuant to K.S.A. [§] 60–1610(a)(4)(D)." Plaintiffs filed this diversity action on September 8, 1993, stating claims under Kansas law for professional negligence.

## Discussion

Summary judgment is appropriate where "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court considers all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The nonmoving party, however, "may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). Thus, summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Defendants seek summary judgment on the ground that they are absolutely immune for their conduct in performing the court-ordered evaluations. As previously stated, plaintiffs bring their claims under Kansas law. When state law creates a cause of action, state law also determines whether there is a defense of immunity. *See Ferri v. Ackerman*, 444 U.S. 193, 198, 100 S.Ct. 402, 406, 62 L.Ed.2d 355 (1979). In this diversity case, then, we ascertain and apply Kansas law in an effort to reach the same that result that Kansas courts would reach. *See Adams–Arapahoe Sch. Dist. No. 28–J v. GAF Corp.*, 959 F.2d 868, 870 (10th Cir.1992). Kansas courts apply Kansas governmental immunity law, *see Head v. Platte County*, 242 Kan. 442, 749 P.2d 6, 10 (1988), which is codified in the Kansas Tort Claims Act ("KTCA"). *See* Kan.Stat.Ann. §§ 75–6101 to –6120 (1989 & Supp.1992).

The KTCA provides in pertinent part:

A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from ... (b) judicial function.

*Id.* § 75–6104(b). The KTCA, however, does not define the term "judicial function." In discerning the meaning of that term as it applies in this case, the Court is mindful that the KTCA is an open-ended tort claims act that makes liability the rule and immunity the exception. *See Huseby v. Board of City Comm'rs*, 754 F.Supp. 844, 846 (D.Kan.1990) (quoting *Carpenter v. Johnson*, 231 Kan. 783, 649 P.2d 400, 402 (1982)).

The only case examining "judicial function" immunity under the KTCA is *Cook v. City of Topeka*, 232 Kan. 334, 654 P.2d 953 (1982). In *Cook*, the Kansas Supreme Court rejected a court clerk's claim that she enjoyed judicial function immunity for her failure to recall a bench warrant. *Id.* 654 P.2d at 955. Defendants in that case argued that "all activities of the judicial branch at any level of government" fell within judicial function immunity under the KTCA; plaintiffs countered that judicial function immunity under the KTCA was limited to discretionary judicial activities—such as deciding cases—and did not include ministerial tasks required by law—such as recalling a bench warrant. *Id.* at 956.

After noting the different contexts in which the term "judicial function" is used,[1]

---

1. *The court distinguished cases discussing judi-* cial function in the context of separation of pow-

the Kansas Supreme Court held that, in the context of a court clerk's activities, a judicial function involved the exercise of discretion and was the opposite of a ministerial act. *Id.* at 957. *Cook* defines a ministerial act as one performed "in a given state of facts in a prescribed manner," *id.*, whereas it defines a judicial function as one involving "the exercise of judgment, discretion, discernment, or discrimination," *id.* at 956 (quoting *Ferguson v. Smith & Durham*, 10 Kan. 396, 404–05 (1872)). Accordingly, *Cook* instructs courts presented with judicial immunity claims to look past the office or title of the person claiming immunity and focus on the intrinsic character of the conduct in issue. *Id.* at 956 (citing *Hamma v. People*, 42 Colo. 401, 94 P. 326 (1908)).

■ In this case, defendants contend that they are entitled to judicial immunity for the performance of their court-appointed duties. Following *Cook*, this Court disregards defendants' employment status and asks simply whether the intrinsic character of their conduct in issue involved the requisite level of discretion.[2] Based on the uncontroverted facts, the Court readily concludes that defendants Deming and Montolio exercised considerable discretion while performing their evaluations and therefore qualify for judicial function immunity under the KTCA.

The Kansas legislature wisely has concluded that courts which resolve child custody disputes might benefit from professional investigation and evaluation of potential custodial arrangements. *See* Kan.Stat.Ann. § 60–1615 (1983). Professionals appointed under this provision do not simply collect sterile data, such as the age, height, and weight of children, but perform complex evaluations and make often difficult decisions regarding custody. These persons are chosen to assist the judiciary precisely because of the expec-

tation that they will exercise their independent judgment and discretion. It is undisputed that defendants in this case exercised their independent professional judgment while performing the evaluations and preparing their findings for Judge Walton.

Plaintiffs contend that defendants cannot qualify for judicial function immunity because (1) their evaluations were performed according to a statutory duty and therefore were ministerial in nature; and (2) judicial function immunity under the KTCA is limited to the "power to interpret and apply the laws in actual controversies" and does not extend to discretionary acts which merely inform judicial disposition. The Court disagrees with both contentions.

First, the Court acknowledges that the Kansas Supreme Court emphasized that the court clerk in *Cook* held a statutory duty to keep accurate records. In that case, however, the court clerk failed to act at all. In this case, defendants *fulfilled* their statutory duty; plaintiffs' complaint lies with the manner in which the defendants complied. As already noted, though, judicial function analysis penetrates formalities to scrutinize the character of the conduct in question. Just as it exalts form over substance to say that a court clerk exercises judicial power by keeping court records, it is equally shallow and formalistic to contend that a genuine exercise of discretion is ministerial simply because it derives from a court order or from a statutorily prescribed duty.

Second, the "intrinsic character" analysis seeks to identify *attributes of judicial power*—like the exercise of judgment, discretion, discernment, or discrimination. *Cook*, 654 P.2d at 956. The Court finds no textual support for plaintiffs' bold assertion that *Cook* intended to limit the universe of acts which evidence attributes of judicial power to

---

ers and cases discerning whether functions performed by a particular governmental agency were legislative, executive, or judicial. *Cook*, 654 P.2d at 956.

**2.** Although defendants technically might not have been employees of the judicial branch, they were government employees as defined under the KTCA and were performing acts intimately associated with judicial proceedings. *See, e.g., Moses*

*v. Parwatikar*, 813 F.2d 891, 892 (8th Cir.), *cert. denied* 484 U.S. 832, 108 S.Ct. 108, 98 L.Ed.2d 67 (1987); *Williams v. Rappeport*, 699 F.Supp. 501, 507 (D.Md.1988); *Lavit v. Superior Court*, 173 Ariz. 96, 99, 839 P.2d 1141, 1144 (Ct.App. 1992); *Awai v. Kotin*, —— P.2d ——, ——, 1993 WL 477519 at *3 (Colo.Ct.App., 1993); *S.T.J. v. P.M.*, 556 So.2d 244, 246 (La.Ct.App.1990); *Gallion v. Woytassek*, 244 Neb. 15, 504 N.W.2d 76, 84 (1993).

those situations in which the defendant applies and interprets laws in actual controversies. Rather, the language chosen by the Kansas Supreme Court clearly embraces discretionary acts appurtenant to judicial rulings.[3]

**IT IS THEREFORE ORDERED** that *Defendants' Joint Motion to Dismiss Or In The Alternative Motion for Summary Judgment* (Doc. # 13) be and hereby is **SUSTAINED.**

---

**3.** In finding defendants immune for psychological evaluations conducted pursuant to court appointment, the Court finds itself in substantial agreement with the vast majority, if not unanimity, of other jurisdictions which have considered the issue. *See* cases cited *supra* note 2. Although those cases arose under state or federal common law quasi-judicial immunity and not the KTCA, they too disregarded the labels of office and title and looked to whether the person claiming judicial immunity, whether a judge, a judicial employee, or an appointed expert, exercised discretion while performing an act in furtherance of the judicial process.