The Honorable Terry L. Bullock Administrative Judge Shawnee County Courthouse Division No. Six Topeka, Kansas 66603
Dear Judge Bullock:
You inquire whether the Kansas Tort Claims Act (Act) insulates the State from liability where a Court Services Officer (CSO), acting within the scope of employment, injures a third party while using the CSO's personal motor vehicle. You also inquire whether a county may reimburse a CSO for any additional insurance premium expense that the CSO may incur as a result of using his or her motor vehicle to conduct such visits.
K.S.A. 75-6103 imposes liability on the State of Kansas and any branch of State government for "damages caused by the negligent or wrongful act[s] or omission[s] of any of its employees while acting within the scope of their employment under circumstances where the [State], if a private person, would be liable under the laws of this State." The definition of "employees" includes employees of the State.[1]
Court Services Officers are appointed by the administrative judge of each judicial district and are paid by the State.[2] CSOs supervise adults and juveniles who are on probation and misdemeanants on parole.[3] They also make recommendations to the Court regarding the release of defendants and supervise those defendants who are released pending trial.[4] In fulfilling their supervisory duties, CSOs visit defendants at home and at work.[5]
Clearly a Court Services Officer is an employee of the judicial branch of the State of Kansas for purposes of the Act, and, therefore, the State may be liable for a CSO's negligence while acting within the scope of employment to the extent a private person would be liable for such negligent employee actions. However, while the Act waives the State's immunity for certain actions of its employees, it also insulates from liability the acts listed at K.S.A 1998 Supp. 75-6104.
In order to determine whether any of those exemptions may apply to a situation where the CSO, acting within the scope of employment, injures a third party while driving his or her motor vehicle, we review the following exceptions to liability at K.S.A. 1998 Supp.75-6104:
 "A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:
. . . .
"(b) judicial function;
. . . .
 "(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved;
. . . .
 "(s) any claim for damages arising from the performance of community service work other than damages arising from the operation of a motor vehicle. . . ."
The Kansas Tort Claims Act makes liability the rule and immunity the exception.[6] The burden is on the State to establish its entitlement to the exceptions listed at K.S.A. 1998 Supp.75-6104.[7] With these principles in mind, we examine the following exceptions.
I. The Judicial Function Exception
In Cook v. City of Topeka,[8] the Kansas Supreme Court considered the "judicial function" exception in the context of a municipal court clerk who had failed to recall a bench warrant. The Court distinguished between a ministerial duty which is the performance of a duty involving no discretion and a judicial act which requires "the exercise of judgment, discretion, discernment and discrimination:"
 "`Judicial functions are determined by the intrinsic character of the duty or act itself, and not by the character of the official designated to perform it. An act in the performance of a ministerial duty is imperative; it is done in obedience to some legal mandate; it involves the exercise of no official discretion and of no judgment as to the propriety of the act. In these respects it is wholly unlike an act in the performance of judicial duties.
 "`A ministerial act may be defined to be one which the person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to the exercise of his own judgment upon the propriety of the act being done.'"[9]
The Court found that Kansas law requires that a municipal court clerk keep certain court records and concluded that the clerk operates under the exclusive jurisdiction and direction of the municipal court. Since a clerk has no discretion concerning whether or not to recall a bench warrant, the Court concluded that the act is ministerial and, therefore, is not a judicial function for purposes of the Kansas Tort Claims Act:
 "One test used to determine whether a clerk of a court is engaged in a judicial . . . or ministerial task is to see if a statute imposes a duty upon the clerk to act in a certain way leaving the clerk no discretion. In Am.Jur.2d it is stated while `[t]here is some conflict as to the judicial or ministerial nature of certain specific duties of a clerk of Court; . . . his duty is purely ministerial when it is prescribed by statute.'"[10]
Relying on the Cook rule that a Court disregard a defendant's employment status and examine "whether the intrinsic character of [the defendant's] conduct . . . involved the requisite level of discretion," the Kansas Federal District Court in Akburnia v.Deming[11] concluded that psychologists who perform court-ordered evaluations in divorce proceedings are entitled to judicial immunity when sued for professional negligence. The Court disagreed with the plaintiff's contention that the "judicial function" immunity is limited to the "power to interpret and apply the laws in actual controversies." It also rejected the argument that the evaluations were performed according to a statutory duty and were, therefore, ministerial.
 "First, the Court acknowledges that the Kansas Supreme Court emphasized that the court clerk in Cook held a statutory duty to keep accurate records. In that case, however, the court clerk failed to act at all. In this case, defendants fulfilled their statutory duty; plaintiffs' complaint lies with the manner in which the defendants complied. As already noted, judicial function analysis penetrates formalities to scrutinize the character of the conduct in question. Just as it exalts form over substance to say that a court clerk exercises judicial power by keeping court records, it is equally shallow and formalistic to contend that a genuine exercise of discretion is ministerial simply because it derives from a court order or from a statutorily prescribed duty."[12]
Court Services Officers are appointed by the Court "to perform the judicial and administrative functions of the district Court."[13] Those functions include venturing out into the community to check on individuals who are on probation, parole, or some kind of pretrial release.
Whether or not a CSO is conducting a judicial function will depend upon why the CSO is being sued. For example, if the CSO is sued for negligence as a consequence of the CSO's supervision of a probationer who injures a third party, a Court that decides whether the CSO is immune under the judicial function exception, will review the "intrinsic" character of the CSO's conduct to see if it involves "the requisite level of discretion." If theAkbarnia holding is applied, the fact that Kansas law authorizes a CSO to supervise certain individuals and visit them at their homes and other places,[14] will not place a ministerial patina on the activity simply because it derives from a statutorily prescribed duty.
However, if the CSO is sued for injuring a third party in an automobile accident while in route to a home or workplace visit, the Akbarnia rationale may not apply if the "intrinsic" character of the CSO's conduct in failing to follow the motor vehicle laws
is not sufficiently related to court direction or a statutory duty.
In the absence of any guidance from the Kansas Appellate Courts or any specific facts, it is our opinion that if the State is sued for the actions of a Court Services Officer who injures a third party in an automobile accident while acting within the scope of employment, the State may not be able to rely on the judicial function exception to immunize it from liability.
2. The Discretionary Function Exception
The State is immune if the tort claim is based upon "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the . . . employee."[15] To determine whether a duty is discretionary, Kansas courts focus on the "nature and quality of the act."[16]
 "Discretion requires more than the `mere exercise of judgment, because judgment is exercised in nearly all endeavors;' instead, a discretionary function must `involve some element of policy formation'."[17]
In Jackson v. City of Kansas City,[18] city firefighters and civilians sued the City of Kansas City when a fire truck in route to a fire collided with another fire truck in route to the same fire.
The Court refused to accord immunity to the City under the discretionary function exemption because the motor vehicle laws of Kansas place a duty of due care for the safety of others on drivers of emergency vehicles:
 "The issue of whether the two [fire truck] drivers had operated their vehicles with due regard for the safety of all persons pursuant to K.S.A. 8-1506 was submitted to the jury. The jury concluded that each driver was 35 percent at fault. From that verdict we must assume the jury concluded the drivers had not driven with due regard for the safety of all persons . . . [Is] the operation of a vehicle under such circumstances to be considered a `discretionary function or duty'. . . . We think not. In fact, it would be difficult to visualize a situation where just the actual physical operation of a motor vehicle upon the highway would be a `discretionary function or duty' within the meaning of [the Kansas Tort Claims Act]"[19]
In light of the Jackson holding, it is our opinion that the discretionary function exception may not apply if the State is sued for the negligence of a CSO who, while acting within the scope of employment, injures a third party while operating a motor vehicle.
3. Community Service Work Exception
K.S.A. 1998 Supp. 75-6104(s) immunizes the State for damages resulting from "any claim for damages arising from the performance of community service other than damages arising from the operation of a motor vehicle."
In Attorney General Opinion No. 81-98, Attorney General Robert T. Stephan raised the specter of liability for municipalities that used probationers for community service work under a master-servant analysis. In 1987, after hearing testimony that local governments were fearful of establishing such programs because of the "threat of tort liability,"[20] the Legislature amended the Kansas Tort Claims Act by adding an exemption for claims arising from community service work unless the claim arose out of a motor vehicle accident.
It appears that this exemption applies to protect governmental entities that employ probationers, but only if the claim does not arise out of a motor vehicle accident. Therefore, it would not be available to protect the State if a CSO, acting within the scope of employment, injured a third party in a motor vehicle accident.
You further inquire whether reimbursement for any additional insurance premium expense that a CSO may incur as a result of using his or her motor vehicle to conduct home or workplace visits is an "expense incurred for the operation of the district court" pursuant to K.S.A. 20-348.
In light of the possible liability to the State and the possible unavailability of any exception to liability under the Kansas Tort Claims Act, you inquire whether county funds may be used to pay any additional insurance premium that a CSO may incur as a consequence of using his or her motor vehicle for work-related purposes. You have received an inquiry from a CSO indicating that her insurance premiums may increase as much as 20% if she uses her vehicle to conduct home or workplace visits.
As you know, K.S.A. 20-348 requires that each board of county commissioners "shall be responsible for all expenses incurred for the operation of the district court in the county." The procedure is set forth in K.S.A. 20-349:
 "The administrative judge . . . shall be responsible for the preparation of the budget to be submitted to the board of county commissioners of each county. The board of county commissioners shall then have final authority to determine and approve the budget for district court operations payable by their county. [The] budget shall include all expenditures payable by the county for operations of the district court in such county. [After] the amount of such district court budget is established, the expenditures under such budget . . . shall be under the control and supervision of the administrative judge, subject to supreme court rules relating thereto, and the board of county commissioners shall approve all claims submitted by the administrative judge within the limits of such district court budget."
If the payment of a portion of insurance premiums is an "expense incurred for the operation of the district court," then the administrative judge should include it in the court's budget for approval by the county commissioners.
In Board of Osage County Comm'rs v. Burns,[21] the Kansas Supreme Court concluded that counties are responsible for all expenses incurred for the operation of the district court unless the expenses are required by law to be paid by the State. The Court held that in the absence of a statute requiring the state to pay attorney fees for indigent misdemeanor defendants, a county was required to do so. This holding was reaffirmed in In Re Care Treatment of Raborn,[22] where the Court rejected the county's argument that K.S.A. 20-348 should only cover the costs of "running the court" and opined that counties must pay attorney fees in cases arising under the Sexually Violent Predator Act.
Prior Attorney General Opinions have concluded that expenses related to a District Court Magistrate's attendance at educational programs fall within the parameters of K.S.A. 20-348 as do certain association membership dues of district court personnel.[23] Finally, Attorney General Robert T. Stephan opined that travel expenses incurred by Court Services Officers should be included in the county budget for operation of the district court.[24]
In light of both the Burns and the Raborn cases, it is our opinion that in the absence of a statute that requires the State to pay for a portion of insurance premiums for Court Services Officers who are required to use their motor vehicles to conduct work-related visits, reimbursement for such expenses, like travel expenses, is an expense incurred for the operation of a district court pursuant to K.S.A. 20-348. However, if a county is already reimbursing CSOs for private vehicle mileage, that reimbursement may be sufficient to cover any increased insurance premium that may result from a CSO using his or her vehicle for work-related purposes. We suggest that the administrative judge of a district court discuss this matter with the Board of County Commissioners who fund the district court's operation.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] K.S.A. 75-6102.
[2] K.S.A. 20-345; 20-346a.
[3] K.S.A. 20-346a; K.S.A. 1998 Supp. 21-4603d; K.S.A.22-3716.
[4] K.S.A. 22-2814; 22-2816.
[5] K.S.A. 1998 Supp. 21-4610.
[6] Smith v. State, 264 Kan. 348, 358 (1998).
[7] Note 6.
[8] 232 Kan. 334 (1982).
[9] 232 Kan. at 337.
[10] 232 Kan. at 338 (Citation omitted.) (Emphasis added in original text.)
[11] 845 F. Supp. 788, affd, 49 F.3d 1482 (1995).
[12] 845 F. Supp at 790.
[13] K.S.A. 20-345.
[14] K.S.A. 1998 Supp. 21-4610.
[15] K.S.A. 1998 Supp. 75-6104(e).
[16] Kansas State Bank Trust Co. v. Specialized Transp.Servs., Inc. 294 Kan. 348 (1991).
[17] 294 Kan. at 365.
[18] 235 Kan. 279 (1984).
[19] 235 Kan. at 288.
[20] Minutes, Senate Judiciary Committee, Attachment III (March 19, 1987).
[21] 242 Kan. 544 (1988).
[22] 259 Kan. 813 (1996).
[23] Attorney General Opinions No. 83-76 and 93-122.
[24] Attorney General Opinion No. 90-88.