**SOONER DRAINBOARD COMPANY and Travelers Insurance Company, Petitioners,**

**v.**

**Mitchell D. DEATON and the State Industrial Court, Respondents.**

**No. 44970.**

Supreme Court of Oklahoma.

July 24, 1973.

H. W. Nichols, Jr., Watts, Looney, Nichols & Johnson, Oklahoma City, for petitioners.

Buck & Crabtree, by Joanna S. Sepkowitz, Oklahoma City, for respondent, Mitchell D. Deaton.

LAVENDER, Justice:

Claimant alleged a back injury while working for Sooner Drainboard Company. The employer and its insurance carrier, Travelers Insurance Company, both petitioners here, denied the claim.

Although the record is not before us, it appears that claimant obtained from the State Industrial Court an award for permanent partial disability, and petitioners' brief indicates that the question of liability for medical expenses was reserved for later consideration. Thereafter, on March 26, 1971, after earlier hearing on the matter, the Court entered an Order as follows:

> "That respondent and insurance carrier are ordered to pay the reasonable and necessary charges of Dr. H., Radiology Assoc. as well as the other expenses incurred by claimant for his treatment at the direction of the respondent, including Dr. H. and Dr. ———.

> "IT IS THEREFORE ORDERED that respondent or insurance carrier pay the bill as hereinabove set out."

This Order, an "Order on Form #19," was appealed to the State Industrial Court

sitting en banc, and it was there adopted and affirmed. The matter is now here for review.

■ Petitioners allege multiple grounds of error, but in their brief state that the medical treatment rendered to claimant by Dr. H. was not authorized by them, and was not an emergency.[1] They say that the sole issue is whether the treatment rendered to claimant by Dr. H. is the responsibility of The Travelers Insurance Company. In view of this position, their assignments of error not briefed are treated as abandoned. Southwestern Bell Telephone Co. v. Cox (1962), Okl., 375 P.2d 972.

Also, because of the limited matter being reviewed, i. e., the correctness of the State Industrial Court's direction of payment of expenses of claimant (not the amount), this Court denied as untimely a motion of claimant to augment the record with copies of various statements of charges for medical services.

■ We also denied a Motion to Dismiss this petition by Order as follows:

"On consideration of Respondents' Motion to Dismiss on the grounds that the record of the proceedings before the State Industrial Court was not filed in this Court within ninety (90) days, this Court finds:

On November 12, 1969, this Court adopted Rules of Appellate Procedure in Civil cases pursuant to 12 O.S.Supp.1969, § 990; and such Rules became effective on January 1, 1970. (See 12 O.S.1971, Ch. 15, App. 2). Part III(b) of the Rules provides for Proceedings to Review a Decision of the State Industrial Court, and Rule 1.104(b) thereof provides:

'The record shall be ready for transmission to this Court not later than ninety days from the date the petition for review is filed in this Court.'

The record in this proceeding was ready for transmission to this Court within the ninety day period as prescribed by Rule 1.104(b).

Respondents' Motion to Dismiss denied."

The transcript referred to is that of the hearing that preceded the State Industrial Court's Order of March 26, 1971, on Form #19, supra. It concerned the matter of medical expenses that had been reserved for later disposition after the hearing in which an award for permanent partial disability was made.

The transcript and petitioners' brief reflect concern about the fairness of petitioners' payment of charges by a doctor who was in no way relied upon by claimant in presentation of his case for disability findings at the earlier hearing. We do not have that record before us, but there is, of course, no requirement that a claimant use any particular competent evidence. We therefore prefer to treat the matter of primary concern to petitioners, which is, as indicated by them, whether the treatment rendered to claimant by the doctor was the responsibility of the employer's insurance company.

■ 85 O.S.1971 § 14 states that the employer shall promptly provide medical treatment to his injured employee, and it follows that in order to do this the employer will select a doctor. However, claimant says that he had implied consent from his employer to use the medical services of Dr. H. In this regard, where it appears from competent evidence that expenses for medical attention are [otherwise] properly allowed, an order to pay them will not be vacated because there is not shown a specific demand for such medical attention and re-

1. 85 O.S. 1971 § 14 provides substantially in pertinent part that if the employer fails or neglects to provide medical treatment within a reasonable time after knowledge of the injury, the injured employee, during the period of such neglect or failure, may do so at the expense of the employer, and he may likewise obtain emergency treatment at the expense of the employer when it is not provided by the employer.

fusal to give the same. Morris et al. v. Bass et al. (1938), 183 Okl. 67, 80 P.2d 281. More recently, we have indicated several times that this general right of an employer to select a physician to treat an injured employee may give way to an implied consent that the employee select a doctor and receive treatment. Sapulpa Tank Company v. Cole (1963), Okl., 386 P.2d 988; Royal Crown Cola Company v. Hinesly (1965), Okl., 403 P.2d 479.

According to Dr. H., as a result of his examination of claimant on March 20, 1968, following a complaint by him of a gradual back injury onset of one to three months while doing his work [for Sooner Drainboard Co.], the doctor hospitalized the claimant on April 1, 1968, because of his severe pain.

According to a letter record of Dr. H., the work claimant had done was that of carrying sand on some boards, a type of job different from his regular salesman's work, and claimant had reported to the doctor that he had slipped and wrenched his lower back. Claimant told the doctor that he had continued to work, and in the week subsequent to the incident he was sent by his employer to a chiropractor but had no substantial relief. He was off work for about a week and had tried to return to work before the doctor examined him for the injury. This letter record information was introduced, after proper identification, by petitioner's counsel, and is further corroborated in part by an uncontroverted statement of claimant's counsel, not objected to, as reflected in this colloquy:

"MR. JERNIGAN: Your Honor, as long as we've entered into argument, I'd like to correct the statement made by counsel: The fact that he used his own doctor. That might be true, but I call the Court's attention to the fact that in the previous testimony, the Claimant testified that he told his employer at the time of the injury: 'I told Mr. Vickers I'd injured my back.

'Did you continue to work?'

'Yes, sir.' "

And later on, in the testimony,—

"THE COURT: Well, this has all been transcribed—

"MR. JERNIGAN: Yes, Your Honor, I realized it has.

"THE COURT: —and I'm going to read it over anyway, so—

"MR. JERNIGAN: However, I would like to call the Court's attention to a couple of items wherein the uncontroverted testimony shows that the employer said that this Claimant could go to any doctor that he chose, which he did: He went to Dr. H. The employer was aware that he was going to Dr. H. There was—the employer had only asked that he see a Dr. ———, whom the Claimant went to—

'Did Mr. Vickers know about that? Did he have any objection to Dr. H.?

'No, sir.

'And you went to Dr. H. again?'

And then the testimony as to the issue here:

'What did the Travelers Insurance Company say?

'They said they wouldn't assume responsibility at that time due to something else.

'Did you have occasion to contact them again when you were in the hospital?

'Yes, sir.

'What did they say then?

'They still wouldn't assume any responsibility.

'Did they ever tell you to use another doctor?

'No, sir.' "

Following claimant's hospitalization on April 1, 1968, Dr. H. performed surgery on him on April 9, 1968, for a ruptured disc in his back, the result of the operation being good. The delay between admission and operation was in order that traction of the patient for about six days might first be tried.

During the pre-operation period, the doctor advised Mr. Smith, a supervisor of Workmens' Compensation and Employers' Liability for The Travelers Insurance Company, by telephone of the patient's situation, Mr. Smith being the person with whom he normally dealt on such matters. Smith told the doctor that Travelers Insurance Co. was not authorizing the patient's care on the basis of an on-the-job injury. According to Mr. Smith, Travelers always declines a claim if the employer says that the injury did not happen on the job, but at the time of the doctor's telephone call Smith refused to authorize surgery or further treatment because Travelers had no file and no information on the matter.

Smith's first knowledge of the case, other than from Dr. H.'s telephone call, came by an Employer's Form #2 notice stamped in by Travelers upon April 5th. Petitioner's counsel elicited from Smith that the form notice indicated that the employer had no information concerning an accident or injury, and that the employer had not referred claimant to a doctor. On later dates Smith received three reports from Dr. H., one being dated April 22, 1968.

The insurance company's adjuster referred claimant to another orthopedic specialist whose report on the matter was dated May 8, 1968. Smith had not made an attempt to ascertain the condition of claimant while he was in the hospital, and did not talk to Dr. H. during the time between the form notice received by Travelers Insurance on April 5th and the operation on April 9th. Smith, himself, never made a request to H. that claimant be treated or transferred to another doctor.

■■ The transcript of the hearing on the reserved question of medical expenses on which the Order of March 26, 1971, is based, has references to evidence received at the prior hearing, which evidence is not before us. Nevertheless, there is competent evidence reasonably tending to establish that the employer and its insurance company each had notice that claimant was in the care of Dr. H. because of his injury while in employ of Sooner Drainboard Company, and would have surgery by Dr. H. as a result of that injury. Claimant was never directed to do otherwise, and this supports the Order's provisions that claimant's treatment was at the direction of the then respondent, Sooner Drainboard Company. To reiterate from Royal Crown Cola Company v. Hinesly, supra:

"The right to select a physician to treat an injured employee is one available to the employer. However, where the employer reasonably implies that claimant may select his own physician, or in cases of an emergency, the employer may be liable, if the medical treatment is necessary and the charges therefor reasonable."

Nor is this implied authorization defeated by the Employer's Form #2 notice to insurer, received on April 5th prior to claimant's surgery on April 9th, that it knew of no injury to claimant and had no information on it, because from the employer's obligation to pay, or have paid, compensation as required by the Workmen's Compensation Law (85 O.S. §§ 11, 14) there logically follows a responsibility that the claimant be first medically treated if in fact injured within contemplation of the Act. This responsibility obviously cannot be defeated by a mere statement of employer that he knew nothing about the injury.

■ The claimant is entitled to have paid the necessary medical expenses obtained by him with the implied consent of the employer. Bowling v. Blackwell Zink Co. (1959), Okl., 347 P.2d 1024.

■ The petition says that the award is contrary to the evidence in the case. That necessarily pre-supposes the whole case, including the initial hearing. Petitioners have not brought before us, in its designated record, evidence controverting the correctness of the State Industrial Court's Order regarding payment of medical expenses other than charges of Dr. H. Evidence in the whole case may or may not support that Court's Order concerning specific medical expenses not before it in its hear-

ing that preceded the Order concerned. In any event, however, medical expense matters not before us cannot be acted upon by us, and that portion of the Court's Order pertaining to them will not be disturbed for this reason alone.

Additionally, however, there is competent evidence reasonably tending to support the Order of the State Industrial Court that all medical expenses incurred by claimant for his treatment was at the direction of the employer, and the responsibility for Dr. H.'s charges being established by the record that is before us, and this being the issue, that portion of the Order directing payment of his charges is affirmed. Royal Crown Cola Company v. Hinesly, supra.

The State Industrial Court's Order is affirmed and the award therein is sustained.

DAVISON, C. J., WILLIAMS, V. C. J. and IRWIN, BERRY, HODGES and SIMMS, JJ. concur.