**Christopher David WILHELM, Appellant,**

v.

**Dan GRAY, Court Clerk of Oklahoma County, Appellee.**

No. 61296.

Supreme Court of Oklahoma.

Dec. 6, 1988.

As Corrected Feb. 14, 1989.

Robert K. McCune, Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, Oklahoma City, for appellant.

Phyllis L. Walta, Asst. Dist. Atty., Oklahoma City, for appellee.

SIMMS, Justice.

Appeal from a judgment of the district court dismissing plaintiff/appellant's cause of action under 42 U.S.C. § 1983, because an adequate remedy under state law exists for redress of plaintiff's claim. AFFIRMED.

The relevant facts are as follows. Plaintiff received a traffic citation. Because he failed to appear in court at the designated time, a bench warrant was issued for his arrest. Later, the plaintiff paid his fine. The warrant was recalled by the Court three days after the fine was paid.

The Court Clerk, appellee Dan Gray, failed to notify the Oklahoma County Sheriff's Office that the warrant had been recalled. Four months later, on Christmas Eve, the appellant was performing his duties as a private security guard when his activities near a business that had closed for the night attracted the attention of a Midwest City police officer. The officer detained the appellant long enough to run a "wants and warrants" computer check on him. When the officer was informed that an outstanding warrant existed, he arrested the appellant.

The appellant was taken to the Midwest City jail where he remained until December 27, at which time it was verified that his fine had been paid and the warrant had been recalled. Thereafter, appellant filed the instant action, alleging that his rights guaranteed by the 4th, 5th, 6th, and 14th Amendments to the United States Constitution had been violated by his erroneous arrest, and seeking damages pursuant to the remedies provided under 42 U.S.C. § 1983.

The appellant's first petition to the district court named the Board of County Commissioners as defendants. Later, the appellant was allowed to amend the petition, naming instead the appellee herein. The appellee responded by demurrer, alleging that a cause of action under § 1983 did not lie because an adequate remedy exists under State law for the appellant's claim.

The appellant was given the opportunity to again amend his petition. He declined, however, choosing to stand on the petition as presented. The district court then sustained appellee's demurrer and dismissed the case. It is from this order dismissing his § 1983 claim that the appellant brings this appeal.

## I.

A single issue is presented on appeal. The question here is whether the trial court erred in dismissing the appellant's § 1983 claim for relief because an independent state remedy for the alleged wrong exists. Any other issues or errors that may have been present have not been briefed and are waived. *Messler v. Simmons Gun Specialties, Inc.*, Okl., 687 P.2d 121 (1984); *Sooner Drainboard Co. v. Deaton*, Okl., 512 P.2d 1185 (1973).

We are of the opinion that resolution of this issue is controlled by four decisions of the United States Supreme Court, see: *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); and to a limited extent, the analysis adopted by that court in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).[1] Both *Hudson* and *Parratt* address the question of whether a cause of action may be maintained under 42 U.S.C. § 1983 for a deprivation of a Constitutionally protected right when alternate state grounds for relief are available. *Daniels* and *Baker* are determinative on the question of whether negligence, alone, may give

---

**1.** *Parratt* was overruled insofar as the case held that the mere lack of due care by a state agent can give rise to a § 1983 claim for violation of Due Process under the Fourteenth Amendment. *Daniels v. Williams*, 106 S.Ct., at 665.

rise to a § 1983 claim for relief based upon the Due Process Clause of the Fourteenth Amendment.

The appellant places great weight on the fact that both *Hudson* and *Parratt* deal with deprivations of property without due process of law, rather than with deprivations of liberty. The appellant argues that this distinction alone is ground for maintaining his § 1983 suit because liberty interests are afforded greater importance in law than are property interests.

While we might agree that, in many circumstances, liberty interests are held in higher regard than property interests, we do not read these cases that narrowly. It is the *deprivation* of a constitutionally protected interest which is the subject matter of both the cases and § 1983, *not* the interest itself. Therefore, whether the alleged violations pertain to liberty interest or to property interests, it is not the type of interest which is determinative, it is the deprivation of a protected right which is actionable.

The clear import of *Hudson* and *Parratt* is that a § 1983 action may not be maintained for the deprivation of a constitutional right if *adequate and meaningful* State grounds for redress exist. *Hudson v. Palmer,* supra, 468 U.S., at 534, 104 S.Ct., at 3204; *Parratt v. Taylor,* supra, 451 U.S., at 543–544, 101 S.Ct., at 1916–1917. In Oklahoma, those State remedies exist in the form of our Political Subdivision Tort Claims Act, 51 O.S.Supp. 1987, § 151, et seq. It is irrelevant that the appellant may not recover as much under the State remedy as he could through § 1983. *Hudson v. Palmer,* supra, 468 U.S. at 535, 104 S.Ct., at 3204.

■ There are common elements between this case and the discussion by the United States Supreme Court in *Parratt* which lend support to the result reached by the trial court here. The appellant's petition sounds in negligence. In fact, the appellant admits as much in his brief.

Here, as in *Parratt,* there is no doubt that a state actor is involved. Similarly, there is no suggestion that the deprivation suffered by the appellant was the result of an established state procedure, but rather was the result of the apparent negligence of one state agent. The Supreme Court in *Parratt,* addressing these very points, adopted the reasoning of the Seventh Circuit in *Bonner v. Coughlin,* 517 F.2d 1311, 1319 (7th Cir.1975), where that court stated:

"It seems to us that there is an important difference between a challenge to an established state procedure as lacking in due process and a property damage claim arising out of the misconduct of state officers.... *even though there is action 'under color of' state law* sufficient to bring the amendment into play, *the state action is not necessarily complete.* For in a case such as this, [the state laws provide], in substance, that the plaintiff is entitled to be made whole for any loss.... occasioned by the unauthorized conduct of the [state employees]. *We may reasonably conclude, therefore, that the existence of an adequate state remedy to redress* property *damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation* of property *without due process of law within the meaning of the Fourteenth Amendment."* *Parratt v. Taylor,* supra, 451 U.S. at 542, 101 S.Ct., at 1916. (emphasis added)

Following the above quotation from *Bonner,* the Supreme Court explicitly stated that the Bonner analysis "is the proper manner in which to approach a case such as this." *Parratt,* at 542, 101 S.Ct., at 1916. Accordingly, even though this case concerns the arguably negligent deprivation of constitutionally protected rights rather than solely property interests, we adopt the *Bonner* analysis.

## II.

■ Because the appellant's amended

petition sounds only in negligence,[2] the cases of *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) are determinative of the narrow issue raised: whether a negligent act by a state agent resulting in a deprivation of a protected right is actionable under § 1983 as a violation of due process. The court's holding that the protections of the Due Process Clause are not triggered by allegations of negligence or lack of due care has been applied in this circuit. See, *Graham v. Gray*, 827 F.2d 679 (10th Cir.1987).

Simply stated, under the rule from *Daniels*, this appellant's allegations of negligence do not rise to a level sufficient to state a claim under § 1983. As stated by the Supreme Court:

"Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law....

False imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official. Where a government official's act causing injury to life, liberty or property is merely negligent, no procedure for compensation is CONSTITUTIONALLY required." *Id.* 474 U.S., at 333, 106 S.Ct., at 666. (emphasis supplied) (citing *Baker v. McCollan*, supra, 443 U.S., at 137, 99 S.Ct., at 2689)

The discussion by the United States Supreme Court in the *Baker* case is especially relevant here. In that case too, the plaintiff had been arrested pursuant to a facially valid arrest warrant and held three days over a holiday weekend, despite his repeated declarations that a mistake had been made. As further stated by the Supreme Court:

"respondent's complaint is simply that despite his protests of [mistake], he was detained in the ... jail [over the holiday weekend until] the validity of his protests was ascertained. **Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution.** Respondent was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment. Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. For the Constitution likewise guarantees an accused the right to a speedy trial, invocation of the speedy trial right need not await indictment or other formal charge; arrest pursuant to probable cause is itself sufficient.

.      .      .      .      .

[M]ere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty ... without due process of law." But we are quite certain that a detention of three days over a [holiday] weekend does not and could not amount to such a deprivation." *Baker v. McCollan*, 443 U.S., at 144–5, 99 S.Ct., at 2694–5, (citations omitted) (emphasis added).

We think it abundantly clear that the appellant's Fourteenth Amendment claim must fail in light of the Supreme Court's holdings in *Daniels* and *Baker*.

### III.

As stated herein, the Oklahoma Political Subdivision Tort Claims Act is perfectly suited to providing redress for appellant's

---

**2.** The appellant has neither plead nor argued that the alleged negligent acts of the appellee were with malice, wantonness, reckless or were the result of gross negligence. Accordingly, like the United States Supreme Court in *Daniels*, supra, we have no occasion to consider whether forms of extreme negligence by a state agent could "trigger the protections of the Due Process Clause." 106 S.Ct., at 667, n. 2.

grievance. As in *Parratt*, Oklahoma "provides a remedy to persons who believe they have suffered a tortious loss at the hands of the state." 451 U.S. at 543, 101 S.Ct. at 1917. Again, as in *Parratt*, the remedies provided by 51 O.S.Supp.1987, § 151, et seq., can fully compensate the appellant for the loss he has suffered, "and we hold that they are sufficient to satisfy the requirements of due process." Id. at 544. The Due Process Clause is not implicated by a merely negligent act of a state official which results in an "unintended loss of or injury to life, liberty, or property." *Daniels*, supra, 474 U.S. at 327, 106 S.Ct., at 662. Therefore, 42 U.S.C. § 1983 is unavailable as a means of redress for the wrongs alleged in this case.

Accordingly, the judgment of the district court is AFFIRMED.

HARGRAVE, V.C.J., and HODGES, LAVENDER and ALMA WILSON, JJ., concur.

ALMA WILSON, Justice, concurring:

I concur because *it is uncontroverted* that the public official acted in good faith and under color of law. I would not further extend the principles herein enunciated.

SUMMERS, J., concurs in judgment.

KAUGER, J., dissents.

DOOLIN, C.J., and OPALA, J., dissent and join KAUGER, J.

KAUGER, Justice, with whom DOOLIN, C.J., and OPALA, J. join, dissenting.

The issues fully briefed and presented on appeal are: 1) Whether the relief provided by 42 U.S.C. § 1983 (1981)[1] may be pursued without recourse to, or exhaustion of, state remedies; 2) Whether the existence of a meaningful state post-deprivation hearing bars the institution of a § 1983 action; and 3) Whether, under the rationale of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); or *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); a significant distinction may be drawn between deprivations of property and liberty interests.

1) In *Willbourn v. City of Tulsa*, 721 P.2d 803, 805 (Okla.1986), this Court, without a dissenting vote, held that the same type of claim, if arising under state law is enforceable in state courts, and that state courts may not arbitrarily refuse to enforce a federal claim for relief under § 1983. We found that consistent with our system of judicial federalism, which provides litigants with a "double-barrelled system of judicial protection" that the remedy provided by § 1983 may be available even if the state remedy is barred by the statute of limitations under the Political Subdivision Tort Claims Act. Our holding was premised on *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492, 503 (1961), and *Wilson v. Garcia*, 471 U.S. 261, 279, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254, 268 (1985) in which the United States Supreme Court held that the remedy provided by § 1983 must be independently enforceable even if a parallel state remedy is available. These controlling decisions are ignored by the majority opinion. 2) The existence of a meaningful state post-deprivation hearing does not bar the institution of

1. The civil action is provided in 42 U.S.C. § 1983 (1981):

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

a § 1983 action.[2] 3) Because of the importance of protecting liberty interests, I would decline to extend *Parratt, Daniels* or *Davidson* beyond negligent deprivations of property interest.

Christopher David Wilhelm, (Appellant–Security Guard), contends that the trial court erred in sustaining the demurrer to the petition of the Court Clerk of Oklahoma County, Dan Gray, (Appellee–Court Clerk). The trial court found that because the security guard had not exhausted his state remedies, he failed to state a cause of action under § 1983 for restraint of personal liberty. Because the § 1983 remedy is supplementary to otherwise available state relief, I find persuasive the security guard's arguments on appeal.

On August 9, 1982, Wilhelm paid a traffic fine. A warrant had previously been issued for his arrest, but after payment of the fine the warrant had been recalled by the Oklahoma County Court Clerk on August 12, 1982. However, the Court Clerk failed to notify the Oklahoma County Sheriff of its cancellation, and on Christmas Eve, December 24, 1982, the on-the-job activities of the security guard attracted the attention of a Midwest City Police Officer. After checking the security guard's identification, the police officer conducted a radio check for outstanding "wants or warrants." When the officer discovered that there was an outstanding warrant issued by the Oklahoma County Sheriff's office for an unpaid traffic fine, he arrested the guard and took him to the Midwest City jail where he remained throughout the Christmas holiday. Wilhelm was transferred to the Oklahoma County jail on December 27, 1982. When he was arraigned on the 27th, it was determined that the security guard's assertions of payment of the ticket were correct and that the warrant had been recalled. Consequently, there was not a val-

id warrant outstanding at the time of his arrest and incarceration.

On March 16, 1983, the security guard brought a § 1983 action alleging that the Oklahoma County Court Clerk, acting under color of law and in his official ministerial capacity, had failed to notify the Sheriff of the recall of the warrant, which resulted directly in his imprisonment. The court clerk filed a demurrer to the petition asserting that Wilhelm had not been denied due process of law nor had he stated a § 1983 cause of action because the state of Oklahoma provides post-deprivation relief under the Oklahoma Political Subdsivision Tort Claims Act, 51 O.S. 1981 § 151 et seq. The trial court, finding that the security guard had an adequate remedy at law, sustained the court clerk's demurrer to the petition.[3]

The security guard argues that 42 U.S.C. § 1983 supplements, complements and may be exercised co-extensively with the Tort Claims Act; and that the *Parratt* decision, holding that § 1983 relief is not available when there is an adequate state law remedy, is applicable only to limited instances of deprivations of property—not to deprivations of liberty. The court clerk concedes, for purposes of this appeal, that the actions were under color of state law, and that the appellant's amended petition stated a cause of action for negligent deprivation of a liberty interest without due process of law. However, the court clerk's position consistently has been, and is here, that because the Tort Claims Act provides adequate post-deprivation due process, the security guard was not denied his 14th Amendment rights.

I

CLAIMS MAY BE PURSUED UNDER 42 U.S. § 1983 WITHOUT RECOURSE TO STATE REMEDIES

Initially, § 1983 was enacted to counter the inability or unwillingness of state

---

2. *Patsy v. Florida Bd. of Regents,* 457 U.S. 496, 507, 102 S.Ct. 2557, 2563, 73 L.Ed.2d 172, 182 (1982); *Patterson v. Coughlin,* 761 F.2d 886, 893 (2nd Cir.1985), cert. denied, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). See also, *Willbourn v. City of Tulsa,* 721 P.2d 803, 805 (Okla.1986).

3. The remedy at law is not adequate because under a § 1983 action the plaintiff can receive attorney fees and punitive damages. *Crowe v. Lucas,* 595 F.2d 985, 993 (5th Cir.1979).

courts and regional police officers to enforce local laws,[4] and to provide a federal forum in which litigants could pursue and, if successful, be recompensed for state deprivation of 14th Amendment rights.[5] The goals of the Reconstruction Congress were to override discriminatory state laws; to provide a federal remedy where the state remedy was inadequate; and to provide a federal remedy where the state remedy, although adequate in theory, was unavailable in practice. It was not the unavailability of state remedies, but rather the failure of certain states to enforce existing laws evenhandedly which supplied the impetus for the Civil Rights Act of 1871.[6]

The United States Supreme Court expanded § 1983's role when the Chicago police, acting under color of state law but without a warrant, broke into the home of the Monroes, a black family that had moved into a white neighborhood, and forced them to stand unclothed while the officers ransacked the home. Thereafter, the officers took Mr. Monroe to the police station where he was interrogated for ten hours and released without the filing of any charges against him. The family filed a § 1983 action alleging that the officers' misbehavior violated their constitutional right to be free from unreasonable searches and seizures. The officers countered that the Illinois tort claims act afforded an exclusive remedy. The Court in *Monroe v. Pape*, 365 U.S. 167, 174, 81 S.Ct. 473, 477, 5 L.Ed.2d 492 (1961) held that the officers' conduct violated the Monroes' constitutional rights, and it expressly repudiated the argument that official misconduct must be authorized by state statute to be considered to be under color of state law. The Court also rejected the argument that tortious conduct under state law for which a remedy is provided may only be pursued in a state action.

There are two essential elements required to maintain a § 1983 cause of action: The conduct complained of must be committed by a person acting under color of state law and the conduct complained of must deprive a person of rights, privileges, or immunities granted by the statutes or Constitution of the United States.[7] *The court clerk admits that his actions were taken under color of state law and that state and federal courts have concurrent jurisdiction over § 1983 causes of action.*[8]

The gist of the court clerk's argument is that because the state of Oklahoma provides sufficient relief under the Political Subdivision Tort Claims Act, the security guard was not deprived of his constitutional rights without due process of law. The security guard's petition alleges that the court clerk's actions allowed a warrant to remain outstanding for more than four months after it had been recalled by an order of the court, and that this resulted in his unlawful arrest and incarceration from December 24 until December 27 in violation of his rights under the 4th, 5th, 6th and 14th Amendments to the United States Constitution.

Because deprivation of federal rights under color of local law is necessary to state a

---

**4.** *Monroe v. Pape*, 365 U.S. 167, 174, 81 S.Ct. 473, 477, 5 L.Ed.2d 492, 498 (1961), overruled 436 U.S. 658, 664, 98 S.Ct. 2018, 2022, 56 L.Ed.2d 611, 619 (1978). See also Comment, "Federalism, Section 1983 and State Law Remedies: Curtailing the Federal Civil Rights Docket by Restricting the Underlying Right", 43 U.Pitts.L. Rev. 1035, 1038 (1982); Comment, "Actionability of Negligence under Section 1983 and the Eighth Amendment," 127 U.Pa.L.Rev. 533, 541–46 (1978).

**5.** Shapo, "Constitutional Tort: *Monroe v. Pape*, and the Frontiers Beyond," 60 N.W.U.L.Rev. 277, 280–81 (1965); Note, "Developments in the Law—Section 1983 and Federalism," 90 Harv.L. Rev. 1133, 1147–56 (1977).

**6.** *Monroe v. Pape*, see note 4, supra.

**7.** *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420, 428 (1981), partially overruled 474 U.S. 327, 333, 106 S.Ct. 662, 665, 88 L.Ed.2d 662, 668 (1986).

**8.** *Allen v. McCurry*, 449 U.S. 90, 99, 101 S.Ct. 411, 417, 66 L.Ed.2d 308, 316 (1980); *Maine v. Thiboutot*, 448 U.S. 1, 11, 100 S.Ct. 2502, 2508, 65 L.Ed.2d 555, 563 (1980); *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) *reh'g. denied* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980).

cause of action under § 1983, there must be a nexus between the deprivation of federal rights and the actions of persons acting under color of local law.[9] In *Conway v. The Village of Mount Kisco, New York*, 758 F.2d 46, 48 (2nd Cir.1985), cert. dismissed, 479 U.S. 84, 107 S.Ct. 390, 93 L.Ed. 2d 325 (1986), the Second Circuit Court of Appeals held that allegations similar to those posed here were sufficient to constitute a constitutional deprivation of liberty actionable under § 1983.[10] The United States Supreme Court granted certiorari in *Conway* on January 27, 1986 No. 84–1947 and on November 17, 1986, it dismissed the petition for certiorari as having been improvidently granted perhaps recognizing a distinction between persons who have already been deprived of a liberty interest and those who had not.

More recently the United States Supreme Court has granted certiorari on *DeShaney v. Winnebago County Dep't of Social Serv.*, 812 F.2d 298, 302 (7th Cir.1987). The Seventh Circuit was presented with the issue of whether a reckless failure by the Wisconsin welfare authorities to protect a child from a parent's physical abuse deprives the child of liberty or property within the meaning of the Fourteenth Amendment. The court found that the failure of the welfare authorities to protect the child from his father was a sufficiently aggravated form of negligence to escape the bar of *Daniels* and *Davidson*.[11] The Eleventh Circuit recently has determined that gross negligence is enough to trigger the protections of the Due Process Clause. In *Burch v. Apalachee Community Mental Health Serv.*, 840 F.2d 797, 802 (11th Cir.1988), the patient was admitted to a mental treatment facility on the strength of voluntary admission forms he signed while heavily medicated, disoriented, and apparently suffering from a psychotic disorder. The court found that he had alleged a deprivation in the constitutional sense.

The very foundation of *Monroe* was its insistence on extending § 1983 remedies, where available, regardless of the adequacy of state remedies. The argument posed in *Monroe*, and here by inference, is that a § 1983 action cannot be entertained until the plaintiff exhausts state judicial remedies. The United States Supreme Court has held that an exhaustion of state administrative remedies is not a condition precedent to the initiation of suit and recovery

9. *Robert K. Bell Enterprises v. Tulsa Co. Fairgrounds Trust Authority*, 695 P.2d 513, 518 (Okla.1985).

10. Certiorari was granted by the United States Supreme Court in *Cerbone v. Conway*, 474 U.S. 1100, 106 S.Ct. 878, 88 L.Ed.2d 915 (1986) and dismissed on November 17, 1986 as improvidently granted. Lynn Conway of White Plains, N.Y., took her car to Bano Buick, a dealership in nearby Mount Kisco, N.Y. According to Ms. Conway's complaint, the dealership was supposed to call her before doing any major work on the car, but without doing so, it installed a new engine and charged her $431.34. Ms. Conway gave the garage a check for the repair bill, but when the car coughed and died on the way home, she told her bank to stop payment on the check. The bank did so, but erred and marked the check returned for insufficient funds. When the car dealers learned that the check had not been credited, they consulted their attorney, Vincent Cerbone, who told them that passing a bad check is a crime in New York. They notified the Mount Kisco police and on June 30, 1977, Ms. Conway was arrested and held in jail for seven hours. Ms. Conway, maintains that her bank notified the car dealer that the check had been good but that payment had been stopped. The 1979 docket hearing sheet from the Mount Kisco Village Court notes the case was dismissed "due to the period of time that has elapsed (not on the merits)." The presiding judge was the lawyer, Mr. Cerbone. Ms. Conway, sued the dealership, its owners, the local police and Mr. Cerbone in federal court, arguing they had acted under color of state law in a conspiracy to maliciously prosecute her and had, therefore, violated her federally protected civil rights. The U.S. District Court dismissed the case, but a panel of the 2d U.S. Circuit Court of Appeals reversed. Mr. Cerbone, the panel said, could not be sued in his capacity as a village judge because of judicial immunity; he could, however, be sued as a private attorney. Moreover, the panel added, a violation of the New York state law against malicious prosecution could form the basis of a federal civil rights claim even though a remedy was available under state law as well, because a loss of liberty was involved.

11. See discussion, infra.

under § 1983.[12] Once a cause of action for a constitutional violation accrues, the state may not extinguish the § 1983 claim.[13] The original purpose of § 1983 was to provide a distinct and independent federal remedy. It is no answer that state law affords relief. The federal remedy is supplemental to the state remedy, and the latter need not be first sought and refused before the former is invoked.

Numerous Supreme Court decisions have recognized the authority of state courts to adjudicate federal constitutional questions.[14] State courts are required to uphold federal law[15] under the supremacy clause, U.S. Const. Art. VI, cl. 2.[16] In a recent United States Supreme Court opinion, *Felder v. Casey,* — U.S. ——, ——, 108 S.Ct. 2302, 2313, 101 L.Ed.2d 123 (1988), the Court stated:

" ... As we have seen, enforcement of the notice-of-claim statute in § 1983 actions brought in state court so interferes with and frustrates the substantive right Congress created that, under the Supremacy Clause, it must yield to the federal interest. This interference, however, is not the only consequence of the statute that renders its application in § 1983 cases invalid. In a State that demands compliance with such a statute before a § 1983 action may be brought or maintained in its courts, the outcome of federal civil rights litigation will frequently and predictably depend on whether it is brought in state or federal court. Thus, the very notions of federalism upon which respondents rely dictate that the State's outcome-determinative law must give way when a party asserts a federal right in state court.... In enacting § 1983, Congress entitled those deprived of their civil rights to recover full compensation from the governmental officials responsible for those deprivations. A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability, and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law. Principles of federalism, as well as the Supremacy Clause, dictate that such a state law must give way to vindication of the federal right when that right is asserted in state court."

The provision by Congress of a cause of action which supplements state tort remedies does not imply that a federal claim must in all instances be adjudicated in a federal forum. Had Congress intended to divest state courts of any concurrent or residual power to hear § 1983 cases,[17] it could have done so. It is not inconsistent either with modern views of state court competence or with the intention of the Reconstruction Congress to allow the state

**12.** *Patsy v. Florida Bd. of Regents,* see note 2, supra. See also, *Willbourn v. City of Tulsa,* see note 2, supra.

**13.** *Patterson v. Coughlin,* see note 2, supra.

**14.** *Allen v. McCurry,* see note 8, supra; *Stone v. Powell,* 428 U.S. 465, 481, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976), reh'g denied, 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158 (1976). See also Aldisert, "Judicial Expansion of Federal Jurisdiction: A Federal Judge's Thoughts on Section 1983, Comity and the Federal Caseload," Law and Social Orders, 557, 572 (1973).

**15.** *Testa v. Katt,* 330 U.S. 386, 393, 67 S.Ct. 810, 814, 91 L.Ed. 967, 969, 172 A.L.R. 225, 230 (1947).

**16.** The U.S. Const. Art VI, cl. 2 provides:
"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

**17.** The Supreme Court has held that § 1983 actions may be brought in state courts. *Maine v. Thiboutot,* see note 8, supra; *Martinez v. California,* see note 8, supra.

judiciary to decide § 1983 actions.[18]

If the same type of claim, arising under state law, would be enforceable in state courts, state courts cannot arbitrarily refuse to enforce an accompanying federal claim.[19] This is consistent with our system of judicial federalism, which provides litigants with a two-fold system of judicial protection.[20] The United States Supreme Court recently held in *Wilson v. Garcia,* 471 U.S. 261, 279, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254, 269 (1985), that the remedy provided by § 1983 is independently enforceable even if a parallel state remedy is available.

## II, III

## THE EXISTENCE OF A MEANINGFUL POST–DEPRIVATION HEARING DOES NOT BAR THE INSTITUTION OF A § 1983 ACTION.

## THE FOURTEENTH AMENDMENT GUARANTEES DUE PROCESS IF GOVERNMENT OFFICIALS ENGAGE IN GROSS NEGLIGENCE OR DELIBERATE ACTS DEPRIVING A PERSON OF LIFE, LIBERTY OR PROPERTY

The determinative question is whether negligent deprivation of a liberty interest constitutes an actionable claim in the wake of the recent partial overruling of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a case in which the United States Supreme Court had held that prisoners could not bring federal civil rights suits for negligent deprivation of property when state law provided an adequate remedy. In his concurring opinion,

Justice Blackmun stressed that *Parratt* was inapplicable to liberty interests. The security guard stresses this point, arguing that *Parratt* is a narrowly focused standard used to analyze alleged deprivations of property without due process of law, and that it does not apply to negligent deprivations of liberty interests.

In *Daniels v. Williams,* 474 U.S. 327–328, 106 S.Ct. 662–663, 88 L.Ed.2d 662, 666 (1986) a prisoner sued prison officials for negligent infliction of bodily injury when he slipped and fell on the prison stairs. The 4th Circuit found that this negligence did not constitute deprivation of a liberty interest, and, applying *Parratt,* found that the prisoner had an adequate remedy in state court. Because of the inconsistency of lower court decisions over what tortious conduct, if any, by state officials rises to the level of a constitutional tort, the United States Supreme Court granted certiorari in *Daniels* resulting in a partial overruling of *Parratt.* The Court found that regardless of whether procedural or substantive due process is involved, prison officials do not violate the due process clause merely by lack of due care, and that the guarantee of due process is applicable to deliberate decisions of government officials to deprive a person of life, liberty or property. Subsequently in *Davidson v. Cannon,* 474 U.S. 344, 348, 106 S.Ct. 668, 670, 88 L.Ed.2d 677, 682 (1986), the Supreme Court held that because the state was not required to guarantee due care by its officials, negligent failure to protect a prisoner from assault by a fellow inmate was not violative of the due process clause.

The federal Courts of Appeals are divided on whether *Parratt* applies to deprivations of liberty.[21] While some circuits have

---

**18.** *Willbourn v. City of Tulsa,* see note 2, supra; Comment, "Federalism, Section 1983 and State Law Remedies: Curtailing the Federal Civil Rights Docket by Restricting the Underlying Right," 43 U.Pitts.L.Rev. 1035, 1038 (1982).

**19.** *Martinez v. California,* see note 8, supra; *Testa v. Katt,* see note 5, supra.

**20.** *Willbourn v. City of Tulsa,* see note 2, supra; Kovnat, "Constitutional Torts and the New Mex-

ico Torts Claims Act", 13 N.M.L.Rev. 1, 19 (1983).

**21.** *Haygood v. Younger,* 769 F.2d 1350, 1356 (9th Cir.1985), cert. denied, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986).

held that it does,[22] other circuits have found it does not.[23] The rationale for applying *Parratt* to liberty interests is that in some situations it is not feasible or practicable to provide a pre-deprivation hearing. It is reasoned that in the absence of allegations that state remedies are insufficient, a meaningful post-deprivation hearing satisfies the due process requirements of the Fourteenth Amendment.[24] However, the United States Supreme Court in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503 (1985) stated straightforwardly that the due process clause provides that certain substantive rights—life, liberty and property—cannot be deprived except by constitutionally adequate procedures.[25] *Loudermill* also acknowledged that the right to due process is conferred *not* by legislative grace, but by constitutional guarantees. In short, once it is determined that the due process clause applies, the question remains what process is due?

The Kansas Supreme Court has decided an analogous case, *Cook v. Topeka*, 232

Kan. 334, 654 P.2d 953, 957, 34 A.L.R. 4th 1172, 1179 (1982). In *Cook* an action was filed under the Kansas Tort Claims Act *and* § 1983 when the court clerk failed to recall a bench warrant after payment of a traffic fine resulting in Cook's arrest. The trial court found that the court clerk's failure to recall the warrant was within the performance of a judicial function, and, therefore, the clerk was cloaked with judicial immunity under both the Kansas Tort Claims Act and § 1983. However, the Kansas Supreme Court held that recall of a warrant was not discretionary; that the court clerk's error was ministerial in nature; and that the clerk was not immune from suit or liability.

The court clerk's alleged failure to recall a warrant resulted in the negligent performance of a ministerial, not a discretionary duty. This failure is not exempt from liability under the Political Subdivision Tort Claims Act, 51 O.S. 1981 § 155.[26] Section 162 [27] of the Act requires the political subdivision to provide a defense and pay any

---

**22.** *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1352 (9th Cir.1981), aff'd on other grounds, sub. nom, *Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983).

**23.** *O'Quinn v. Manuel*, 767 F.2d 174, 176 (5th Cir.1985); *Haygood v. Younger*, see note 21, supra; *Vail v. Bd. of Educ. of Paris Union Sch. Dist. No. 95*, 706 F.2d 1435, 1440–41 (7th Cir. 1983), aff'd on other grounds, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984).

**24.** Note 21, supra.

**25.** *Short v. Kiamichi Area Vo–Tech School*, 761 P.2d 472, 477 (Okla.1988).

**26.** It is provided by 51 O.S.1981 § 155 in pertinent part:
"A political subdivision or an employee acting within the scope of his employment shall not be liable if a loss results from: ...
2. Judicial or quasi-judicial functions;
3. Execution or enforcement of the lawful orders of any court; ...
5. Performance or the failure to exercise or perform any act or service which is in the discretion of the political subdivision or its employees; ..."
This statute was amended in 1984, however, the changes are not relevant in this case.
See also, *Robinson v. City of Bartlesville Bd. of Educ.*, 700 P.2d 1013–17 (Okla.1985).

**27.** Title 51 O.S.1981 § 162 provides:
"A. A political subdivision, subject to procedure requirements imposed by statute, ordinance, resolution or written policy, shall:
1. Provide a defense for any employee when liability is sought for any violation of property rights or any rights, privileges or immunities secured by the Constitution or laws of the United States when alleged to have been committed by the employee while acting within the scope of employment; and
2. Pay or cause to be paid any judgment entered against any employee and/or political subdivision or settlement agreed to by the political subdivision entered against any employee; and any costs or fees, for a violation of property rights or any rights, privileges or immunities secured by the Constitution or laws of the United States which occurred while the employee was acting within the scope of employment.
B. A political subdivision shall have the right to recover from an employee the amount expended by the political subdivision to provide a defense, or pay a settlement agreed to by the employee and the political subdivision, or pay the final judgment, if it is shown that the employee's conduct which gave rise to the action was fraudulent or corrupt or if the employee fails to reasonably cooperate in good faith in defense of the action.
C. Nothing in this section shall be construed to authorize a political subdivision to pay for

judgment entered against its employee for violation of any rights, privileges or immunities secured by the Constitution or laws of the United States occurring while the employee is acting within the scope of employment. Under the Civil Rights Act, court clerks have absolute judicial immunity only when acting in a quasi-judicial capacity or under court order.

The question here is whether the negligence of the clerk was either so flagrant, so deliberate, or so reckless that it is removed from the dogma that mere lack of due care by a public official does not deprive an individual of life, liberty or property under the fourteenth amendment. The teaching of *Daniels* and *Davidson* is inapplicable if the negligent act constituting the cause of action is accompanied by evil intent or gross negligence.[28] Gross negligence is defined by 25 O.S. 1981 § 6 as the lack of slight care and diligence. The intentional failure to perform a manifest duty in reckless disregard of the conse-

quences or in callous indifference to the life, liberty or property of another may result in such a gross want of care for the rights of others and of the public that the presumption of a wilful, wanton deliberate act is justified.[29]

Substantive due process embodies the right to enjoy the security of life and limb,[30] and the right to compensation under § 1983 for injuries suffered as the result of deliberate or gross misuse or abuse of the state's power. The purpose of § 1983 is to insure the vindication of constitutional rights—state tort remedies were not designed for that purpose.[31] A case which involves a deprivation of property can be fully compensated by state post-deprivation remedy. However, false arrest involves a deprivation of liberty, and state post-deprivation remedies cannot fully compensate the victim for time wrongfully spent in jail. Because of the importance of protecting liberty interests such as those involved here, as I read federal jurisprudence and

any punitive or exemplary damages rendered against an employee, nor to allow the political subdivision to pay for any defense, judgment, settlement, costs or fees which are paid or covered by any applicable policy or contract of insurance."
This section was amended substantially in 1987. The provision to provide defense and pay any judgment entered against its employee remains substantially the same.

**28.** In *DeShaney v. Winnebago County Dep't of Social Serv.*, 812 F.2d 298, 302 (7th Cir.1987), cert. granted, —— U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988), the court found that the failure of the defendant to protect the plaintiff was a sufficiently aggravated form of negligence to escape the bar of *Daniels* and *Davidson*. See also, *Burch v. Apalachee Community Mental Health Serv.*, 840 F.2d 797, 802 (11th Cir.1988); *Taylor v. Ledbetter*, 818 F.2d 791, 795 (11th Cir.1987).

**29.** *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1630, 75 L.Ed.2d 632, 651 (1982); *Wierstak v. Heffernan*, 789 F.2d 968, 974 (1st Cir. 1986); *Medcalf v. State of Kan.*, 626 F.Supp. 1179, 1182 (D.Kan.1986); *Mitchell v. Ford Motor Credit Co.*, 688 P.2d 42, 45–6 (Okla.1984); *Thiry v. Armstrong World Industries*, 661 P.2d 515, 517 (Okla.1983); *Wootan v. Shaw*, 205 Okl. 283, 237 P.2d 442, 444 (1951).
The petition's allegations support the inference of gross negligence:
"... 7. That Defendant, Dan Gray, County Clerk of Oklahoma County, unreasonably and

without necessary cause failed to establish administrative procedures which would timely notify the Oklahoma County Sheriff's Off that a warrant had been recalled by Order of the Court and said warrant should be cleared from their files.
8. *That Defendant, Dan Gray, Oklahoma County Court Clerk, unreasonably and without necessary cause failed to train and instruct those agents, servants and employees under his supervision and control of the proper method of notifying the Oklahoma County Sheriff's Office, in a timely manner, that a warrant had been recalled by Order of the Court and that a warrant should be cleared from the files of the Sheriff's Department.*
9. That due to the lack of proper administrative procedures and lack of training and instruction of Defendant's agents, servants and employees, located in the Oklahoma County Court Clerk's Office, the Plaintiff's liberty was restrained against his will and without valid warrant in violation of the 4th, 5th 6th and 14th Amendments to the Constitution of the United States...."

**30.** *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980).

**31.** *Thompson v. State of N.Y.*, 487 F.Supp. 212, 226 (N.D.N.Y.1979).

Oklahoma law concerning gross negligence, I would decline to extend *Parratt, Daniels* or *Davidson* beyond negligent deprivations of property interests.

Insofar as the negligence issue is concerned, the majority opinion relies heavily on *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). *Baker* is distinguishable on at least three grounds: 1) The United States Supreme Court framed the question in terms of whether an allegation of simple negligence is sufficient to state a cause of action under § 1983. Here the issue is whether the actions of the court clerk constituted gross negligence. 2) The *Baker* Court found that, in the absence of an attack on the validity of the warrant issued for the respondent's arrest, the respondent's imprisonment did not give rise to a claim under the United States Constitution. The warrant issued by the Oklahoma County Court Clerk was invalid because it had been recalled four months before the security guard's arrest. 3) The United States Supreme Court held that because of the broad spectrum of conceivable constitutional violations which might be the subject of a § 1983 action a uniform answer may be impossible. Thus, the majority has applied *Baker* with too broad a brush.

While I offer no comment as to the merits of the security guard's claim, I would conclude that it was premature to sustain the demurrer to the petition which, under a proper statutory interpretation [32] is sufficient to allege a cause of action for gross negligence. The concurring in judgment opinion apparently concludes that because the action is a federal cause of action the federal pleading code controls. However, the law of the forum governs pleadings.[33] In appraising the sufficiency of a petition, the accepted rule is that a petition should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the party to relief.[34] This conclusion is further supported by the Oklahoma decisional law which holds that issues of negligence and the degrees thereof are questions for the trier of fact.[35]

SUMMERS, Justice, concurring in judgment.

The amended petition invokes the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, and alleges that plaintiff was denied rights protected thereunder. The majority has correctly affirmed dismissal of his due process claims under the Fourteenth Amendment in Part II. Allegations of negligence simply do not state a cause of action under § 1983 for a deprivation of any interest protected by the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Plaintiff has not briefed for this court any issues alleged to be controlled by the Fourth, Fifth or Sixth Amendments, and the majority, therefore, properly treats them as waived.

That portion of the opinion dealing with the adequacy of state remedies (i.e., the Political Subdivision Tort Claims Act) is, I believe, overly broad. Although a claim based on deprivation of *procedural* due process will properly be dismissed if ade-

---

**32.** Title 12 O.S.Supp.1987 § 2008(F) provides: "All pleadings shall be so construed as to do substantial justice."

**33.** *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778, 104 S.Ct. 1473, 1480, 79 L.Ed.2d 790, 800 (1984); *Am. Steamboat Co. v. Chace*, 83 U.S. 522, 534, 16 Wall. 522, 534, 21 L.Ed. 369, 372–73 (1873); *Valley Loan Serv. v. Neal*, 205 Okl. 94, 235 P.2d 932, 935 (1951). Although the concurring in judgment opinion cites *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), it does not discuss what procedural law

applies, it discusses the borrowing of state statute of limitations for federal claims.

**34.** *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957); *Buckner v. Gen. Motors Corp.*, 760 P.2d 803, 812 (Okla. 1988). See also, Committee Comment to 12 O.S.Supp. 1984 § 2012.

**35.** *Flanders v. Crane Co.*, 693 P.2d 602, 605 (Okla.1984); *Prickett v. Sulzberger & Sons Co.*, 57 Okl. 567, 157 P. 356, 365 (1916).

quate and meaningful state remedies exist, *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), the availability of a comparable state remedy is not considered a basis for dismissing a *substantive* due process claim. *Archie v. City of Racine,* 826 F.2d 480, 486–87 n. 6 (7th Cir.1987); *Gilmere v. City of Atlanta, Georgia,* 774 F.2d 1495, 1499 (11th Cir.1985), *cert. denied,* 476 U.S. 1124, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986); *Wilson v. Beebe,* 770 F.2d 578, 580 (6th Cir.1985).

Arguably the plaintiff alleged both kinds in his amended petition. We need not burden ourselves with the issue, however, since plaintiff's due process claim of either sort must fail under *Daniels,* supra. Nor need we distinguish between alleged negligent violation of property interests versus liberty interests; *Daniels,* was a suit for personal injuries by a prisoner, a type of suit that would be classified as invoking a liberty interest. See, *Daniels v. Williams,* 474 U.S. at 341, 106 S.Ct. at 680, where Justice Stevens' opinion concurring in judgment states that "the interest in freedom from bodily harm surely qualifies as an interest in 'liberty'."

The dissenters point out that *Daniels,* supra, does not go so far as to immunize an official from suit if the neglience alleged is so flagrant as to constitute gross negligence. A claim brought pursuant to 42 U.S.C. § 1983 is a federal cause of action and federal law governs the elements of such a cause of action. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

The case of *Williams v. City of Boston,* 784 F.2d 430 (1st Cir.1986) states the federal necessity of pleading facts showing gross negligence amounting to recklessness or deliberate indifference in order to bring a § 1983 claim. In *Williams,* the plaintiffs' pleading was explained as follows:

"The plaintiffs make two basic contentions. The first is that the City of Bos-

ton, through its officers, failed to establish effective security procedures for the protection of black students at 'interracial school events in racially hostile and violent white neighborhoods'. This failure is alleged to have been a 'custom and practice' of the City. The named defendants are the City, the mayor, the Police Commissioner, the School Committee, the Superintendent of Schools, the Director of School Safety, and the Principals of Jamaica Plain and Charlestown High Schools.... There is no allegation in the complaint that the defendants acted intentionally or with gross negligence amounting to callous indifference or reckless disregard of their duties. Indeed, the plaintiffs fail to point out what measures the defendants should have taken to render adequate security to prevent a black football player from being shot by a spectator." *Id.* 784 F.2d at 432–33.

The district court dismissed the plaintiffs' complaint. *Id.* 784 F.2d at 433. The appellate court made the following observations:

"Significant omissions from the complaint confirm that the plaintiffs allege nothing more than simple negligence. They do not allege that the defendants had knowledge of the impending attack; nor do they allege that there had been racial violence at previous school athletic events in Charlestown. Moreover, they do not assert that the defendants provided no security at the game. Their grievance is that the City provided inadequate security." *Id.* 784 F.2d at 434.

The court then explained that the absence of allegations sufficient to plead more than negligence required dismissal of a due process claim. *Id.* The court went on to explain that the plaintiffs' allegations "fail to meet the requirements of Section 1983." *Id.* 784 F.2d at 434.

"Other courts have required an allegation and proof of at least gross negligence or deliberate indifference by supervisory officials to satisfy Section 1983....

To state a claim against the City and its supervisory officials, Darryl Williams and his family must allege, at least, that the defendants were grossly negligent to the point of recklessness or deliberate indifference in failing to establish a custom or policy of adequate security at school events. The plaintiffs have been given three opportunities to make this allegation, but have failed to do so. Their claim must be dismissed." *Id.* 784 F.2d at 434–35.

The allegations in *Williams* are similar to those in the case before us. The plaintiff in *Williams* alleged a failure to provide "effective security". The plaintiff herein alleges a failure of "proper administrative procedures," the lack of a "proper method", and the absence of procedures which are "timely". Even a liberal reading of plaintiff's petition here conveys to this observer only allegations of simple negligence, and therefore the claim was correctly dismissed. Thus I concur in the Court's result but for the reasons expressed herein.